## UNITED STATES COURT OF FEDERAL CLAIMS

NAVAJO NATION, a federally recognized Indian )
Tribe; IDENTIFIABLE GROUP OF RELOCATION )
BENEFICIARIES, consisting of "Navajo families )
residing on Hopi-partitioned lands as of December )
22, 1974[,]" per Public Law 93-531, § 11(h), 88 Stat. )
1712, 1716 (1974), as amended and previously )
codified at 25 U.S.C. § 640d-10(h), )
                                      )
        Plaintiffs, )
                                        )
    v. )                No. 21-1746-ZNS
                                        )
UNITED STATES, )
                                        )
        Defendant. )

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF OPINION AND ORDER ON MOTION TO DISMISS, OR ALTERNATIVELY, TO ENTER PARTIAL FINAL JUDGMENT ON OR CERTIFY FOR INTERLOCUTORY APPEAL CLAIMS BY RELOCATION BENEFICIARIES AND FOR ONHIR GRAZING TRESPASS

Daniel I.S.J. Rey-Bear
Rey-Bear McLaughlin, LLP
421 W Riverside Ave, Suite 1004
Spokane, WA 99201-0410
telephone: 509-747-2502
dan@rbmindianlaw.com

Attorney of Record

July 3, 2024

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

ARGUMENT ....................................................................................................6

I.    THE COURT'S DECISIONS ON BENEFICIARIES' STANDING AND GROUP
      STATUS AND GRAZING TRESPASS MUST BE RECONSIDERED BECAUSE
      THOSE      DECISIONS      OVERLOOK      GOVERNING      STATUTES,
      REGULATIONS, STANDING AND TRUST LAW, AND RELEVANT
      ALLEGATIONS...........................................................................................6

      A.    Justice Requires Interlocutory Reconsideration to Correct Clear Errors of
            Unconsidered Law or Fact and to Avoid Manifest Injustice, Based on
            Statutes' Plain Meaning with Those and Allegations Construed Favorably
            for Plaintiffs ........................................................................................6

      B.    The Court's Standing Ruling Must Be Reconsidered Because It Did Not
            Carefully Consider the Plain Meaning of Section 640d-10, Governing
            Standing and Trusts Law, Plaintiffs' Allegations, and Defendant's
            Concessions..........................................................................................8

      C.    The Court's Identifiable-Group Ruling Requires Reconsideration Because
            It Misreads that the Indian Tucker Act's Plain Meaning and Supporting
            Cases Allow "Other" Not "Former" Groups, and Standing Law which
            Precludes the Nation from Representing the Beneficiaries as Constituents,
            as It Does Not.....................................................................................14

      D.    The Grazing Trespass Ruling Requires Reconsideration for Clarification
            and to Correct an Impermissible Implied Self-Dealing Exception from
            ONHIR's Own Express Grazing Trespass Prohibition, Damages, and
            Penalties ............................................................................................22

II.   ABSENT RECONSIDERATION, PARTIAL FINAL JUDGMENT TO ALLOW
      AN APPEAL FOR CLAIMS BY THE BENEFICIARIES AND FOR ONHIR'S
      GRAZING TRESPASS IS WARRANTED UNDER RCFC 54(b) BECAUSE
      THOSE CLAIMS ARE DISCRETE AND THERE IS NO JUST REASON FOR
      DELAY ....................................................................................................26

      A.    Partial Final Judgment Should Be Entered for Ultimate Disposition of
            Separate Parties or Cognizable Claims Where Immediate Appeal Would
            Avoid a Lengthy Delay Without Risk of the Same Issue in a Later Appeal ........26

B.      Dismissal of the Beneficiaries is Clearly a Final Judgment for Them, and Their Standing, Group Status, and Pre-2014 Settlement Claims Are Discrete So Their Appeal Should Not Be Delayed Many Years for the Remaining Claims ...................................................................................................28

C.      The Court's Potential Dismissal of the Discrete ONHIR Grazing Trespass Claim Also Warrants Entry of Partial Final Judgment to Avoid Delay Because the Remaining Grazing Claims Do Not Also Involve Self-Dealing ...................................................................................................29

III.    ABSENT RECONSIDERATION OR PARTIAL FINAL JUDGMENT, THE COURT SHOULD CERTIFY ITS RULINGS ON THE BENEFICIARIES AND GRAZING SELF-DEALING PER 28 U.S.C. § 1292(d)(2), SINCE THOSE INVOLVE CONTROLLING LEGAL QUESTIONS FOR WHICH OPINIONS DIFFER AND IMMEDIATE APPEAL WOULD ADVANCE THIS LITIGATION..................................................................................................31

A.      For Interlocutory Appeal, the Court Must Certify That Issues Involve a Controlling Question of Law for Which There is Substantial Ground for Difference of Opinion and Immediate Appeal May Materially Advance Ultimate Termination of the Litigation ...................................................31

B.      The Court's Rulings on the Beneficiaries' Standing and Group Status Should Be Certified for Interlocutory Appeal Because They Concern Justiciability, They Conflict with Extensive Precedent, and an Appeal Now Will Facilitate Discovery and Avoid a Later Appeal and Remand for Additional Proceedings............................................................................33

C.      The Dismissal of the Grazing Self-Dealing Claim Also Should Be Certified for Interlocutory Appeal Because It Likewise Involves a Controlling Legal Question, It Conflicts with Precedent, and an Appeal Now Will Facilitate Discovery and Avoid a Later Appeal and Remand for Additional Proceedings............................................................................34

CONCLUSION....................................................................................................35

# TABLE OF AUTHORITIES

**STATUTES**

25 U.S.C. § 640d-10(a) .................................................................................2, 9

25 U.S.C. § 640d-10(h) ................................................................................ *passim*

25 U.S.C. § 640d-11(a) ...............................................................................2, 29

25 U.S.C. § 640d-11(c)(2)(A) ...........................................................................11

25 U.S.C. § 640d-13 ..................................................................................2, 11

25 U.S.C. § 640d-13(a) ....................................................................................2

25 U.S.C. § 640d-14 ..................................................................................2, 11

25 U.S.C. § 640d-14(a) ....................................................................................2

25 U.S.C. § 640d-14(b) ....................................................................................2

25 U.S.C. § 640d-28(a) ....................................................................................2

28 U.S.C. § 1292(d)(2) .........................................................................1, 6, 31, 35

Act of Dec. 22, 1974, Pub. L. 93-531, 88 Stat. 1712 ........................................2

Act of Dec. 22, 1974, Pub. L. 93-531, § 13(a)-(b)(1), 88 Stat. 1717 ........................2, 17

Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B) ....................................4, 18

Indian Tucker Act, 28 U.S.C. § 1505 ........................................................ 4, 14-17, 22

Navajo and Hopi Indian Relocation Amendments Act of 1980,
  Pub. L. 96-305, § 4, 94 Stat. 929, 930-32 ....................................................2

Navajo and Hopi Indian Relocation Amendments of 1988,
  Pub. L. 100-666, § 8, 102 Stat. 3929, 3933 .................................................2

Tucker Act, 28 U.S.C. § 1491(a)(1) .................................................................22

**REGULATIONS**

25 C.F.R. § 83.1 ..........................................................................................15

25 C.F.R. § 700.13(b) .................................................................................5, 23

25 C.F.R. § 700.97 .........................................................................................3

25 C.F.R. § 700.701(b) ...........................................................................................3, 12

25 C.F.R. § 700.705 .....................................................................................................25

25 C.F.R. §§ 700.709(a) ...........................................................................................5, 23

25 C.F.R. § 700.711(a) .................................................................................................23

25 C.F.R. § 700.711(b) .............................................................................................5, 23

25 C.F.R. § 700.725 .............................................................................................1, 5, 25

25 C.F.R. § 700.725(a) .............................................................................................5, 23

43 C.F.R. § 9230 ..........................................................................................................25

**CASES**

Abbey v. United States, 101 Fed. Cl. 239 (2011) ........................................................27

Aleut Tribe v. United States, 702 F.2d 1015 (Fed. Cir. 1983) ......................................31

Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592 (1982) .........21

Alta Wind I Owner Lessor C v. United States, 169 Fed. Cl. 1 (2023) ........................ 6-7

Arizona v. Navajo Nation, 599 U.S. 555 (2023) ..........................................................24

Bear v. United States, 112 Fed. Cl. 480 (2013) ...............................................8, 14, 34

Begay v. United States, 16 Cl. Ct. 107 (1987), aff'd, 865 F.2d 230 (Fed. Cir. 1988)..................10

Bell v. United States, 169 Fed. Cl. 466 (2024) ................................... 8, 10-11, 14, 34

Biery v. United States, 818 F.3d 704 (Fed. Cir. 2016) ...................................................7

British Airways PLC v. United States, 170 Fed. Cl. 305 (2024)........................8, 14, 34

Brueswitz v. Wyeth LLC, 562 U.S. 223 (2011) ...........................................................11

Cheyenne & Arapaho Tribes v. United States, 151 Fed. Cl. 511 (2020)................21, 34

Chippewa Cree Tribe of Rocky Boy's Reservation v. United States,
    69 Fed. Cl. 639 (2006), reconsid. denied, 73 Fed. Cl. 154 (2006) .......................... *passim*

Coast Fed. Bank, FSB v. United States, 49 Fed. Cl. 11 (2001)............................... 31-32

Commil USA, LLC v. Cisco Systems, Inc., 575 U.S. 632 (2015) ................................24

Conn. Yankee Atomic Power Co. v. United States, 142 Fed. Cl. 87 (2019).................... 26-28, 30

Consolidated Coal Co. v. United States, 75 Fed. Cl. 537 (2007) ...................................... 27, 29-30

Crow Creek Sioux Tribe v. United States, 900 F.3d 1350 (Fed. Cir. 2018)..................................7

Cully Corp. v. United States, 163 Fed. Cl. 676 (2022)....................................................................7

Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1 (1980) ................................................ 26-27

D & J Investments of CENLA, LLC v. Baker Hughes A G E Co., LLC,
    52 F.4th 187 (5th Cir. 2022) .............................................................................................27

Doe No. 1 v. United States, 163 Fed. Cl. 608 (2023), interloc. certif.
    pet. granted, 2023 WL 2609124 (Fed. Cir. March 23, 2023) ...................................... 31-34

E&I Global Energy Svs., Inc. v. United States, 152 Fed. Cl. 524 (2021) .................................. 6-7

EcoFactor, Inc. v. Google LLC, 104 F.4th 243,
    2024 WL 2807318 (Fed. Cir. June 3, 2024) ....................................................................26

Fairholme Funds, Inc. v. United States, 147 Fed. Cl. 126 (2020),
    aff'd in part & rev'd in part, 26 F.4th 1274 (Fed. Cir. 2022) ...................................... 31-34

F.D.A. v. Alliance for Hippocratic Medicine, 602 U.S. 367 (2024)........................................13, 34

Fisher v. United States, 149 Fed. Cl. 204 (2020)...........................................................................32

Fletcher v. United States, 26 F.4th 1314 (Fed. Cir. 2022)..............................................7, 10, 17, 23

Fredericks v. United States, 125 Fed. Cl. 404 (2016)...................................................7, 10, 21, 34

Irving v. Hodel, 481 U.S. 704 (1987) ........................................................................... 10, 21, 33-34

Jicarilla Apache Nation v. United States, 100 Fed. Cl. 726 (2011)................................................24

Klamath Irr. Dist. v. United States, 69 Fed. Cl. 160 (2005) .................................................. 31-32

Koopmann v. United States, 151 Fed. Cl. 805 (2021)...............................................................27, 30

LeBeau v. United States, 474 F.3d 1334 (Fed. Cir. 2007).........................................................9, 34

Lujan v. Defenders of Wildlife, 504 U.S. 55 (1992) .....................................................................13

Lummi Tribe v. United States, 870 F.3d 1313 (Fed. Cir. 2017).....................................................33

McGhee v. Creek Nation, 122 Ct. Cl. 380 (1952) .........................................................................19

Military-Veterans Advocacy v. Sec. of Veterans Affairs, 7 F.4th 1110 (Fed. Cir. 2021).............21

Montana v. Blackfeet Tribe, 471 U.S. 759 (1985).............................................................8, 14, 34

Mynette Techs., Inc. v. United States, 170 Fed. Cl. 201 (2024)...................................... 6-7

Navajo Nation v. Wells Fargo & Co., 344 F. Supp. 3d 1291 (D.N.M. 2018),
    appeal dism'd, 2019 WL 13219820 (10th. Cir. 2019)........................................21

Navajo Tribe v. United States, 624 F.2d 981 (Ct. Cl. 1980) .................................24

Navajo Tribe v. United States, 364 F.2d 320 (Ct. Cl. 1966) ...............................25, 35

Norman v. United States, 942 F.3d 1111 (Fed. Cir. 2019)....................................10

North Carolina Dep't of Rev. v. Kimberly Rice Kaestner
    1992 Family Trust, 588 U.S. 262 (2019)................................................9, 34

Northern Paiute Nation v. United States, 10 Cl. Ct. 401 (1986)............................16, 21

Northrop Corp. v. United States, 27 Fed. Cl. 795 (1993)....................................32

Osage Tribe v. United States, 85 Fed. Cl. 162 (2008)......................................17

Osage Nation v. United States, 57 Fed. Cl. 392 (2003).....................................17

Osage Producers Ass'n v. Jewell, 191 F. Supp. 3d 1243 (N.D. Okla. 2016) ................21

Ottawa Tribe v. United States, 166 Ct. Cl. 373 (1964)....................................25, 35

Pauma Band of Luiseno Mission Indians v. California, 343 F. Supp. 3d 952
    (S.D. Cal 2018), aff'd, 973 F.3d 953 (9th Cir. 2020) ..............................27, 29

PGBA, LLC v. United States, 60 Fed. Cl. 567 (2004) ...................................27, 29

Pedden v. United States, 145 Fed. Cl. 785 (2019)..........................................10

Red Lake & Pembina Bands v. Turtle Mountain Band of
    Chippewa Indians, 355 F.2d 936 (Ct. Cl. 1965) .......................................19

Return Mail, Inc. v. United States, 157 Fed. Cl. 35 (2021) ...................................7

Salman Ranch Ltd. v. United States, 89 Fed. Cl. 653 (2007)................................ 32-33

Scanlan v. Eisenberg, 669 F.3d 838 (7th Cir. 2012)..........................................9

Sessions v. Morales-Santana, 582 U.S. 47 (2017)........................................21, 34

Shoshone Indian Tribe v. United States, 52 Fed. Cl. 614 (2002) ...........................25, 35

Shoshone Indian Tribe v. United States, 672 F.3d 1021 (Fed. Cir. 2012)...................25, 35

South Carolina v. North Carolina, 558 U.S. 256 (2010)....................................21

Starr Int'l Co., Inc. v. United States, 856 F.3d 953 (Fed. Cir. 2017)......................................21, 34

Starr Int'l Co., Inc. v. United States, 112 Fed. Cl. 601 (2013) .....................................................31

Snoqualmie Tribe v. United States, 372 F.2d 951 (Ct. Cl. 1967)............................................20, 34

Tanner-Brown v. Haaland, ___ F.4th ___, 2024 WL 3152558 (D.C. Cir. June 25, 2024) .....7, 11, 33

Tee-Hit-Ton Indians v. United States, 348 U.S. 272 (1955) ....................................................15, 34

Tee-Hit-Ton Indians v. United States, 128 Ct. Cl. 82,
    120 F. Supp. 202 (1954), aff'd, 348 U.S. 272 (1955)............................................. 15-16, 34

Thompson v. United States, 122 Ct. Cl. 348 (1952)......................................................................16

Ute Indian Tribe v. United States, 99 F.4th 1353 (Fed. Cir. 2024) ...............................................24

United Launch Servs., LLC v. United States, 139 Fed. Cl. 721 (2018) .........................................32

United States v. Jicarilla Apache Nation, 564 U.S. 162 (2011).....................................................24

United States v. Milner, 583 F.3d 1174 (9th Cir. 2009) .................................................................23

United States v. Mitchell, 463 U.S. 206 (1983)..............................................................................24

United States v. Santee Sioux Tribe, 254 F.3d 728 (8th Cir. 2001) ..............................................21

United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003) .....................................24, 34

Valley Forge Christian Coll. v. Americans United for Sep. of Church & State, Inc.,
    454 U.S. 464 (1982)..........................................................................................................13

Vereda, Ltda. v. United States, 271 F.3d 1367 (Fed. Cir. 2001) ...................................................32

Warth v. Seldin, 422 U.S. 490 (1975)...............................................................................7, 10, 33

Western Shoshone Identifiable Group v. United States,
    2008 WL 96977144 (Fed. Cl. Oct. 31, 2008) ......................................................................9

Western Shoshone Identifiable Group v. United States, 143 Fed. Cl. 545 (2019) ............19, 21, 34

Wilkinson v. United States, 440 F.3d 970 (8th Cir. 2006) .............................................................21

White Mountain Apache Tribe v. United States, 11 Cl. Ct. 614 (1987)............................ 24-25, 35

Wolfchild v. United States, 731 F.3d 1280 (Fed. Cir. 2013).....................................................20, 34

Wolfchild v. United States, 72 Fed. Cl. 511 (2006) ......................................................................20

Wolfchild v. United States, 101 Fed. Cl. 54 (2011), reconsid. denied, 101 Fed.
Cl. 92 (2011), aff'd & rev'd in part,731 F.3d 1280 (Fed. Cir. 2013) ............. 13, 15-16, 34

Yazzie v. Hobbs, 977 F.3d 964 (9th Cir. 2020) ........................................................13

**RULES**

RCFC 23(b)(2) ................................................................................................................22

RCFC 54(b) ........................................................................................................ *passim*

RCFC 59 .........................................................................................................................6

**OTHER AUTHORITY**

H. Conf. Rep. No. 96-1094 (1980) .........................................................................3, 12

H. Rep. No. 100-1032 (1988) ............................................................................ 3, 11-12

Restat. (Third) of Trusts §§ 45 & cmt. g, 48 .................................................................9

S. Rep. No. 100-425 (1988) ...........................................................................................2

Arlyssa Becenti, "Diné enrolled population increases to 399,494," Navajo Times, April
26, 2021, available at https://navajotimes.com/reznews/dine-enrolled-population-
increases-to-399494/ .................................................................................................18

2022 Navajo Nation General Election Results, available at https://navajoelections.navajo-
nsn.gov/2022-NN-GENERAL-ELECTION-RESULTS .................................................18

## INTRODUCTION

Pursuant to RCFC 54(b), Plaintiffs hereby move for this Court to reconsider three matters in its April 30, 2024 Opinion and Order ("Opinion") on Defendant's Motion to Partially Dismiss Plaintiffs' Complaint ("MTD"), ECF Nos. 7, 34. First, the standing ruling must be reconsidered because it overlooks relevant standing and trusts law and allegations and concessions, and nullifies the explicit mandate in 25 U.S.C. Section 640d-10(h) that the New Lands "shall be used solely for the benefit of Navajo families residing on Hopi-partitioned lands as of December 22, 1974[.]" Second, the Court's "identifiable group" ruling must be reconsidered because it overlooks that the above statutory text satisfies the "controlling question" for "other"—not "former"—group status under the Indian Tucker Act, where tribal representation is not asserted, required, or viable. Third, the Court's grazing-trespass ruling must be reconsidered because there can be no dispute that the Office of Navajo Hopi Indian Relocation ("OHNIR") is committing grazing trespass on the New Lands and there is no implied self-dealing exemption from the express regulatory prescription in 25 C.F.R. Section 700.725 that "[t]he owner of any livestock grazing in trespass on the New Lands is liable" for trespass damages and penalties "for use as a range improvement fund" for those lands.

Alternatively, if the Court does not reconsider the claims by the Relocation Beneficiaries and for grazing self-dealing, the Court should enter partial final judgment for those claims under RCFC 54(b) because there is no just reason for delaying their appellate consideration. Absent that, the Court should certify those claims for interlocutory appeal under 28 U.S.C. Section 1292(d)(2) because they each involve a controlling question of law for which there are substantial grounds for difference of opinion and an immediate appeal may materially advance the ultimate termination of this litigation. In either instance, allowing appeal now for those claims will facilitate timely further proceedings in this Court on all claims in this case. Defendant opposes reconsideration and reserves its position on the remaining relief pending review of this motion.

## BACKGROUND

Section 11(h) of the Act of December 22, 1974, Pub. L. 93-531, 88 Stat. 1712 ("1974 Act"), was enacted by the Navajo and Hopi Indian Relocation Amendments Act of 1980 ("1980 Act"), Pub. L. 96-305, § 4, 94 Stat. 929, 930-32, amended by the Navajo and Hopi Indian Relocation Amendments of 1988 ("1988 Act"), Pub. L. 100-666, § 8, 102 Stat. 3929, 3933 (altogether, the "Relocation Act"), and codified at 25 U.S.C. § 640d-10(h) ("Section 11(h)"). It provides thus:

> The lands transferred or acquired pursuant to this section shall be administered by the Commissioner until relocation under the Commission[er]'s plan is complete and such lands shall be used solely for the benefit of Navajo families residing on Hopi-partitioned lands [("HPL")] as of December 22, 1974: *Provided,* That the sole authority for final planning decisions regarding the development of lands acquired pursuant to this subchapter shall rest with the Commissioner until such time as the Commissioner has discharged his statutory responsibility under this subchapter.

The referenced Commissioner leads ONHIR and title to the referenced lands is held by the United States in trust for the benefit of the Navajo Nation ("Nation"). *Id.* §§ 640d-10(a), -11(a). The referenced families are "required to relocate" from HPL under the Relocation Act unless they receive a life estate to remain there. 25 U.S.C. §§ 640d-14(a), -14(b), -28(a). The referenced plan is the "relocation plan," "in accordance with" which Congress has "authorized and directed" ONHIR to complete relocation of "all" these families within five years after the plan took effect. *Id.* § 640d-13(a). Also, Congress required ONHIR to identify "the names of all members" of these families, and it largely has done so. 1974 Act § 13(a)-(b)(1), 88 Stat. 1717; *see* Compl. ¶¶ 11-15. While relocation was required to be completed by July 7, 1986, S. Rep. No. 100-425, at 3, 4 (1988), Navajo relocation constitutes ONHIR's principal pending "statutory responsibility" under the Relocation Act besides New Lands administration, *see* 25 U.S.C. §§ 640d-13, -14; Compl. ¶ 24.

Congress enacted the "administration" and "use" clauses of Section 11(h) in the 1980 Act to "provide[] that the lands acquired for relocation purposes must be used solely for that purpose and will be administered by" ONHIR until relocation under its plan is "complete" because "the

issue of resettlement lands for Navajo relocatees [w]as the single most important factor in easing relocation." H. Conf. Rep. No. 96-1094, at 12, 13 (1980). In the 1988 Act, Congress revised the use clause to clarify that the lands "shall be available to all Navajo families relocated under this Act and not only those which were residing on the Hopi lands as of" the 1980 Act. H. Rep. No. 100-1032, at 9 (1988). The 1988 Act also added the proviso, shortly after most of the relevant lands were transferred or acquired in trust, Compl. ¶ 27, "out of concerns that the development of the new lands not be unnecessarily slowed down" and that "such development should be done in accordance with" the Relocation Act's directive that ONHIR "assure that the acquisition of housing shall be provided to the relocatees simultaneously with related community facilities and services[.]" H. Rep. No. 100-1032, at 9. That "directive is especially important" for these "New Lands" "where the creation of a whole new community of relocatees is contemplated . . . ." *Id.*

Consistent with all the above, ONHIR has defined the "New Lands" as "the land acquired for the use of relocatees under the authority of Pub. L. 96-305, 25 U.S.C. 640d-10." 25 C.F.R. § 700.701(b). ONHIR also has defined what is required to establish residence on HPL in 1974. *Id.* § 700.97; Compl. ¶ 10. ONHIR also has acknowledged that the New Lands are "'a resource that belongs to'" both the Nation "'and'" to these families and that "'ONHIR has a fiduciary responsibility to manage this property . . . for the benefit of these beneficiaries.'" Compl. ¶ 47. ONHIR also has conceded that "if duties under the Relocation Act are not complied with regarding the New Lands," these families could "successfully litigate their rights under the Act." *Id.* ¶ 37.

The statutorily defined families have been mostly identified by ONHIR as required and comprise over 4,000 to perhaps almost 7,000 families, including children born after 1974, or likely many more than 20,000 Navajos. Compl. ¶¶ 7, 10-17. About 124 of these families still reside on HPL, and 421 of them now reside on the New Lands, in a new local Chapter of the Nation, while the remainder have been relocated elsewhere, mostly elsewhere on the Navajo Reservation. *See*

*id.* ¶¶ 11-18. The Complaint designates these families as "Relocation Beneficiaries" based on how Section 11(h) identifies them in relation to HPL and the New Lands, *id.* ¶ 6, though the Court has referred to them simply as "Beneficiaries," Op. at 1. They constitute an identifiable group factually with a direct, distinct, and common legal interest under Section 11(h) regarding the New Lands that is not merely based on their Navajo citizenship and is separate from interests of the Nation and other Navajos. Compl. ¶¶ 8, 15. As such, they have asserted claims in this case as an "other identifiable group of American Indians" under the Indian Tucker Act, 28 U.S.C. § 1505. Compl. ¶ 4. For example, ONHIR sometimes has agreed that New Lands revenue shall be deposited in trust solely for the benefit of the Beneficiaries. *Id.* ¶ 90. ONHIR has done that for millions in Twin Arrows Casino rent. MTD Oral Arg. Tr. at 35-36 (Oct 19, 2022) ("Tr."); *see* Compl. ¶¶ 30, 90.

Consistent with Indian Tucker Act practice, the Beneficiaries are represented by ten members thereof, who are each Navajo citizens. Compl. ¶¶ 19-20. The Nation does not represent the Beneficiaries in this case because of the Beneficiaries' distinct legal interests in the New Lands, because ONHIR has direct statutory, fiduciary duties to the Beneficiaries, because the Nation is not a member of the Beneficiaries, and because of basic restrictions on standing. *See id.* ¶¶ 5-8, 36-37, 37, 41, 47; MTD Resp. at 7-10, ECF No. 12 ("MTD Resp."). Also, only the Beneficiaries seek attorney fees under the Equal Access to Justice Act in the request for relief, Compl. at p. 41, because only they are an eligible party for those under that law, 28 U.S.C. § 2412(d)(2)(B).

For August 2014 to the present, the Beneficiaries' claims are coextensive with those of the Nation. *See* Tr. at 28. However, the Beneficiaries' discrete legal interests in and claims related to the New Lands were not included in and are not affected by the Nation's 2014 trust litigation settlement since they were not parties to that and that did not and could not apply to them. *See id.* at 29-30; Compl. ¶¶ 157, 160; MTD Resp. at 14-15. Consistent with that, Defendant has conceded that "the United States did not argue that the Nation's Tribal trust settlement waived and released

the Relocatees' claims." MTD Reply at 8 n.2, ECF No. 15 ("MTD Reply"). Moreover, because ONHIR has never communicated to the Beneficiaries regarding administration of the New Lands or revenue therefrom, their claims in this case cover the entire period of ONHIR's (mal)administration of the New Lands. *See* Compl. ¶¶ 153-56.

ONHIR's grazing regulations prescribe that only individual adult "enrolled Navajo" citizens who are relocatees with "permanent residency on the New Lands" may graze their own livestock there, and that any other livestock grazing there is "prohibited" and constitutes "Livestock trespass[.]" 25 C.F.R. §§ 700.709(a), .711(b), .725(a). The regulations also prescribe that "[t]he owner of any livestock grazing in trespass on the New Lands is liable" for trespass damages and penalties "for use as a range improvement fund." *Id.* § 700.725. There is no grazing trespass exemption for ONHIR, nor has ONHIR waived those regulations. Compl. ¶ 43. ONHIR has prescribed requirements for waiving its regulations, but only in writing on a case-by-case basis when found to be in the best interest of relevant individual Indians. 25 C.F.R. § 700.13(b).

Plaintiffs filed this case for damages from federal maladministration of grazing, leasing, rights of way, and revenue deposits, investments, and expenditures regarding the New Lands. Compl. ¶ 1. Defendant moved to dismiss only the Beneficiaries' claims, the leasing and rights-of-way claims, the Nation's claims that accrued before its 2014 trust mismanagement litigation settlement, the request for equitable relief, and the subset of grazing claims for trespass damages and penalties by and against ONHIR. MTD, ECF No. 7. The Court denied the motion regarding the leasing and rights-of-way claims and the requested equitable relief. Op. at 15-25, 26. The Court granted the motion regarding the Beneficiaries' standing and identifiable-group status, as well as for the Nation's pre-2014 claims and the claim for damages and penalties for grazing trespass by the United States. *Id.* at 8-15, 25-26. Defendant has since filed its Answer to the Complaint. ECF No. 37. No discovery in the case has yet occurred and no litigation schedule has yet been set.

**ARGUMENT**

The rulings on the Beneficiaries' standing and identifiable-group status and the ONHIR grazing-trespass claim all must be reconsidered under RCFC 54(b) as justice requires for clear error since they each misread governing laws, missed relevant allegations, and missed and misread precedent. If the Court does reconsider those rulings, the Court should enter partial judgment for that party and that claim under RCFC 54(b) because those rulings finally dispose of those matters, and there is no just reason to delay immediate appeal to avoid delay in resolving those. Finally, if the Court does not reconsider or enter partial final judgment on those matters under RCFC 54(b), the Court should certify those for interlocutory appeal under 28 U.S.C. Section 1292(d)(2) because they each concern disputed controlling questions of law and will advance resolution of this case.

**I.    THE COURT'S DECISIONS ON BENEFICIARIES' STANDING AND GROUP STATUS AND GRAZING TRESPASS MUST BE RECONSIDERED BECAUSE THOSE DECISIONS OVERLOOK GOVERNING STATUTES, REGULATIONS, STANDING AND TRUST LAW, AND RELEVANT ALLEGATIONS.**

**A.    Justice Requires Interlocutory Reconsideration to Correct Clear Errors of Unconsidered Law or Fact and to Avoid Manifest Injustice, Based on Statutes' Plain Meaning with Those and Allegations Construed Favorably for Plaintiffs.**

Under RCFC 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b). That Rule governs reconsideration of interlocutory decisions, rather than the "'"more rigorous"'" standard under RCFC 59 for post-judgment reconsideration. *Mynette Techs., Inc. v. United States* ("*Mynette*"), 170 Fed. Cl. 201, 221-22 & n.7 (2024) (quoting *Alta Wind I Owner Lessor C v. United States* ("*Alta Wind*"), 169 Fed. Cl. 1, 8 (2023) (quoting *E&I Global Energy Svs., Inc. v. United States* ("*E&I*"), 152 Fed. Cl. 524, 532 (2021))). Under RCFC 54(b), courts have "'"broad flexibility to revise interlocutory orders"'" simply "'"as justice

requires.'"" *Id.* at 223 (quoting *Alta Wind*, 169 Fed. Cl. at 9 (quoting *E&I*, 152 Fed. Cl. at 532)).

"Asking 'what justice requires amounts to determining, within the [c]ourt's discretion, whether reconsideration is necessary under the relevant circumstances.'" *Cully Corp. v. United States*, 163 Fed. Cl. 676, 686-87 (2022) (citation omitted). This flexibility is not "'an opportunity for a party to take a second bite at the apple[,]'" *id.* at 687 (citation omitted) and "reassert arguments that 'were previously made and carefully considered by the court.'" *Return Mail, Inc. v. United States* ("*Return Mail*"), 157 Fed. Cl. 35, 39 (2021) (additional quote and cites omitted). Nor is this "'an invitation for litigants to treat interlocutory decisions "as mere first drafts' . . . [because] RCFC 54(b) afford[s] judges . . . great[] discretion to deny motions for reconsideration that offer no good reasons to alter interlocutory decisions.'" *Mynette*, 170 Fed. Cl. at 223 (citations omitted). Still, courts must address reconsideration with exceptional care and may grant it "'to correct clear factual or legal error or prevent manifest injustice.'" *Return Mail*, 157 Fed. Cl. at 39 (quoting, *inter alia*, *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016)).

Moreover, the Court must apply governing standards for review of facts and law. As in prior consideration of the motion to dismiss, "the Court must accept all factual allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff." Op. at 8. That includes facts regarding standing. *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018). That also includes the clear Supreme Court requirement that a court must assume the merits of plaintiffs' claims, including that they are "correct on [t]he[i]r legal theory that the statute could give rise to a [federal-Indian] trust relationship with attendant fiduciary duties[.]" *Tanner-Brown v. Haaland*, __ F.4th __, 2024 WL 3152558, *5-*6 (D.C. Cir. June 25, 2024) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975) and discussing *Fletcher v. United States*, 26 F.4th 1314 (Fed. Cir. 2022)); *see* MTD Resp. at 7 ("'the extent of trust property' concerns 'the merits, not standing'") (quoting *Fredericks v. United States*, 125 Fed. Cl. 404, 414 (2016)).

Finally, statutory interpretation begins with the statutory language, and if that is clear and unambiguous based on its text and structure, the inquiry ends with that plain meaning. *British Airways PLC v. United States* ("*British Airways*"), 170 Fed. Cl. 305, 314 (2024) (citing cases); *Bell v. United States*, 169 Fed. Cl. 466, 474-76 (2024) (citing cases). That includes giving every word its "'ordinary meaning'" and giving every clause meaning, both in their statutory context "'with a view to their place in the overall statutory scheme.'" *Bell*, 169 Fed. Cl. at 475-77 (citing many cases). And like the allegations, "'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'" *Bear v. United States*, 112 Fed. Cl. 480, 486 (2013) (quoting *Montana v. Blackfeet Tribe* ("*Blackfeet*"), 471 U.S. 759, 766 (1985)).

**B.     The Court's Standing Ruling Must Be Reconsidered Because It Did Not Carefully Consider the Plain Meaning of Section 640d-10, Governing Standing and Trusts Law, Plaintiffs' Allegations, and Defendant's Concessions.**

The Court held that the Beneficiaries lack standing to assert trust maladministration claims for the New Lands because they did not establish that they have a trust relationship with the United States. Op. at 10.  For this, the Court found that a trust corpus "is missing" and "[t]here is nothing for the government to administer [for] or distribute to the beneficiaries." *Id.* at 10-11. The Court further found that Section 11(h) simply gives them a "land-use interest" and does not give them a property interest or "confer a tangible benefit from the government" to which the Beneficiaries are individually entitled. *Id.* The Court also found that "Plaintiffs failed to show, or even allude to, any evidence that Congress intended the . . . Act to create a trust relationship between the government and the individual beneficiaries in relation to the New Lands" since nothing in the Act explicitly instructs the government to administer the New Lands any specific way for them and "it does not even identify the government as the party who should be using the land for the beneficiaries' benefit." *Id.* at 11. All that must be reconsidered to prevent manifest injustice since it overlooks the law and facts which establish a federal trust relationship for the Beneficiaries.

First, the Court wrongly ruled that a trust corpus is missing. Section 11(a) expressly provides that the New Lands are a trust corpus held for the Nation. 25 U.S.C. § 640d-10(a). That clearly and unambiguously benefits the Beneficiaries since they are by definition "Navajo families[,]" *id.* § 640d-10(h), who are citizens of the Nation, *see* Compl. ¶¶ 6-8. The Court failed to consider that this supports their trust relationship even while the Court's identifiable-group analysis recognized that "these individual beneficiaries are members of . . . the Navajo Nation," Op. at 14. This trust corpus necessarily encompasses benefits for the Beneficiaries regardless of the clause limiting that corpus's use solely for their benefit being in Section 11(h) rather than 11(a).

Without careful considering this, the Court failed to address any cited law which confirms that the trust corpus need not be in the Beneficiaries' own name. Under governing precedent, """the common law of trusts doesn't require a beneficiary to have a vested interest in order to bring a breach-of-trust [claim.]""" Tr. at 31-32 ((quoting *W. Shoshone Identifiable Group v. United States*, 2008 WL 96977144, *7 (Fed. Cl. Oct. 31, 2008) (quoting *LeBeau v. United States*, 474 F.3d 1334, 1343 n.6 (Fed. Cir. 2007))). This was explained by more authority the Court missed:

> [a] fiduciary relationship exist[s] where a settlor directs a trustee to administer property for a beneficiary, and a beneficiary's interests may be separate from trust assets. *N.C. Dep't of Rev. v. Kimberly Rice Kaestner 1992 Family Trust*, [588 U.S. 262, 265, 277] . . . (2019) . . . . In other words, "members of a definite class of persons" are beneficiaries if they are owed duties based on the settlor's intent in a trust declaration, regardless of whether property is conveyed to another in trust. *See* Restat. (Third) of Trusts §§ 45 & cmt. g, 48. Moreover, beneficiaries have "a legally protected interest" in the trust corpus and "proper administration" thereof, with standing to sue for breach of trust simply if those interests "'are or may be adversely affected[.]'" *Scanlan v. Eisenberg*, 669 F.3d 838, 842, 846 (7th Cir. 2012) . . . .

MTD Resp. at 7-8. Section 11 and allegations here satisfy those standards. Compl. ¶¶ 1, 53-54, 69, 80, 91, 109. Yet the Court clearly erred in overlooking all that. That precludes the Court's failure to find a trust corpus, and that in turn supports the Beneficiaries' standing.

Second, the Court's acknowledgement that Section 11(h)'s use clause "gives the

[B]eneficiaries a land-use interest" in the New Lands, Op. at 10, confirms that they are New Lands trust beneficiaries. The Court failed to address that, "'[c]ontrary to the government's view of the law,' vesting of rights is not relevant to standing and Indians have an 'injury in fact' for standing even if they suffered only injury to prospective interests." MTD Resp. at 6 (quoting *Fredericks*, 125 Fed. Cl. at 413 & n.6). Thus, "alleging that federal conduct "'deprived'" Indians of interests that "'they otherwise would have'" received suffices for standing." *Id.* (quoting *Fredericks*, 125 Fed. Cl. at 414 (quoting *Irving v. Hodel*, 481 U.S. 704, 711 (1987))). Consistent with that, the Beneficiaries' interest is "legally protected" and provides standing because Section 11(h) expressly limits the New Lands' use solely for them and "use of the word 'shall' means what follows is mandatory, not discretionary." *Norman v. United States*, 942 F.3d 1111, 1117 (Fed. Cir. 2019). The Court must give the use clause that plain, ordinary meaning, *see Bell*, 169 Fed. Cl. at 474-77, and that statutory text constitutes the best evidence of congressional intent, *Pedden v. United States*, 145 Fed. Cl. 785, 798 (2019). Therefore, Section 11(h)'s explicit trust corpus "land-use" mandate solely for the Beneficiaries conclusively "evidence[s] that Congress intended the . . . Act to create a trust relationship between the government and the individual beneficiaries in relation to the New Lands." *Contra* Op. at 11. In sum, Section 11(h)'s use clause expressly makes the Beneficiaries trust beneficiaries for the New Lands. No other interpretation thereof is tenable.

All that precludes the Court's misapplication of *Fletcher* and *Begay v. United States*, 16 Cl. Ct. 107 (1987), *aff'd,* 865 F.2d 230 (Fed. Cir. 1988). Unlike one-time payments made and concerns merely "taken into consideration" in *Begay*, *id.* at 123, Section 11 directs that this trust corpus "shall be used solely for the benefit of" the Beneficiaries. Like the law in *Fletcher*, "the text of the 19[80] Act plainly indicates that . . . [the Beneficiaries] have a trust relationship with the United States." *Fletcher*, 26 F.4th at 1322. And per *Warth* after reviewing *Fletcher*, the Court must accept the Beneficiaries' legal theory that Section 11 establishes a trust relationship for them

with attendant fiduciary duties. *See Tanner-Brown*, 2024 WL 3152558, at \*5-\*6.

Third, the Court failed to carefully consider and apply the plain meaning of Section 11(h)'s use clause in relation to Section 11(h)'s administration clause and its proviso and the rest of the Relocation Act. Section 11(h) expressly provides both that the New Lands "shall be administered by" ONHIR "and such lands shall be used solely for the benefit of" the Beneficiaries. 25 U.S.C. § 640d-10(h). That conjunctive "and" expressly imposes both constraints on the New Lands trust corpus since use of the conjunctive imposes both requirements. *See Brueswitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011). Also, the latter clause must be considered in its context and "not . . . in a vacuum[.]" *Bell*, 169 Fed. Cl. at 477 (multiple citations and quotations omitted).

As the Court held on the merits, Section 11(h) "clearly instructs ONHIR to administer the New Lands." Op. at 19. That entails "an ongoing . . . fiduciary duty" with "full, exclusive, and final administrative control over the development of the New Lands" including "leasing and rights of way." *Id.* at 19-20 (citing 25 U.S.C. §§ 640d-10(h) and -11(c)(2)(A)). All those duties continue until ONHIR has "discharged [its] statutory responsibility" of relocating the Beneficiaries from HPL. 25 U.S.C. §§ 640d-10(h), -13, -14. And ONHIR exclusively administers how the New Lands "shall be used" "until relocation is complete." Op. at 3. And under the PAR Act, Arizona New Lands revenues must be deposited in trust for the Beneficiaries. Compl. ¶¶ 117-18. Yet ONHIR has done that only for Twin Arrows Casino rent. Tr. at 35-36; *see* Compl. ¶¶ 30, 90.

With that context, Section 11(h)'s use clause clearly and unambiguously sets a specific limit on ONHIR's administration of the New Lands: to use them solely to develop "a whole new community" for the Beneficiaries, H. Rep. No. 100-1032, at 9, and to generate Arizona New Lands revenue for them, not the Nation or others. Contrary to the Court's conclusion, Section 11(h) plainly provides that ONHIR shall administer the New Lands—rather than "nothing"—for the Beneficiaries. *Contra* Op. at 11. Section 11(h) also explicitly "identif[ies] the government as the

11

party who should [sic, actually "shall"] use the land for the beneficiaries' benefit" and it "explicitly instructs the government to administer" the New Lands a "specific way for the beneficiaries." *Contra id.* In this, Section 11(h) confers "tangible benefit[s] from" ONHIR to the Beneficiaries: development of and revenue from "resettlement lands" solely for their use. *Compare id. with* Compl. ¶¶ 27, 90; 25 C.F.R. § 700.701(b); H. Rep. Nos. 96-1094, at 12, 13 & 100-1032, at 9. Nor must the Beneficiaries each prove "individual" entitlement since they are a "single group plaintiff" and federal maladministration is "experienced as an injury common to . . . all" Beneficiaries, as in *Chippewa Cree Tribe of Rocky Boy's Reservation v. United States* ("*Chippewa*"), 69 Fed. Cl. 639, 667, 674 (2006), *reconsid. denied*, 73 Fed. Cl. 154 (2006). Section 11(h)'s use clause is not free-floating without material meaning detached from the rest of Section 11 and ONHIR's exclusive ongoing statutory responsibility. And any possible doubt about the meaning of Section 11 must be construed in the Beneficiaries' favor. The Court's clear errors in this require reconsideration.

Fourth, the Court failed to consider material concessions and allegations which must be accepted as true and construed in the Beneficiaries' favor and which support their standing. Namely, the Court overlooked ONHIR's admissions that the New Lands are "'a resource that belongs to'" both the Nation <u>and</u> the Beneficiaries and that "'ONHIR has a fiduciary responsibility to manage this property and related resources for the benefit of these beneficiaries.'" Compl. ¶ 47 (quoting April 11, 2018 ONHIR Letter to U.S. Government Accountability Office). The Court also overlooked ONHIR's acknowledgement that "if duties under the Relocation Act are not complied with regarding the New Lands," the Beneficiaries could "successfully litigate their rights under the Act." *Id.* ¶ 37. The Court also overlooked that ONHIR has sometimes agreed and required that significant New Lands revenue shall be deposited in trust solely for the benefit of the Beneficiaries. *Id.* ¶¶ 30, 90; Tr. at 35-36. Contrary to Defendant's *post hoc* litigating position, ONHIR could not make those statements and take those actions unless Congress established a legal trust relationship

between ONHIR and the Beneficiaries. The Court also overlooked that Plaintiffs sufficiently pled that the Beneficiaries' acknowledged "land-use interest" has been very adversely affected by ONHIR. *E.g.*, *id.* ¶¶ 53-54, 69, 80, 91, 109. The Court also overlooked Defendant's concession that it "did not argue that the Nation's Tribal trust settlement waived and released the Relocatees' claims." MTD Reply at 8 n.2. That entails that the Beneficiaries have standing to assert their own claims. For those claims, Plaintiffs' allegations sufficiently establish Defendant's real harm to the Beneficiaries' legally protected "land-use interest" in this trust corpus.

All that establishes the Beneficiaries' standing under *Fletcher*, *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560-61 (1992), and additional authority. The Beneficiaries are not merely Navajo "constituents" as the Court found, Op. at 14. They are not merely "concerned bystanders" with speculative, generalized grievances, like the anti-abortion doctors in *F.D.A. v. Alliance for Hippocratic Medicine* ("*AHM*"), 602 U.S. 367, 382 (2024), or the Navajo voters in *Yazzie v. Hobbs*, 977 F.3d 964, 966-67 (9th Cir. 2020). Instead, this group has actual, concrete, particularized injuries caused by ONHIR's maladministration of the New Lands and revenue therefrom, which has materially harmed them many ways, in addition to and separate from the Nation itself and unlike any other Navajos. *E.g.*, Compl. ¶¶ 53-54, 69, 79-80, 91, 95-97, 108-110, 116, 127-33, 141-43, 146-51. That gives them a required "'personal stake' in the dispute." *AHM*, 602 U.S. at 368 (citation omitted). It also makes their "land-use interest" and their claims fall squarely within the zone of interests legally protected by the statutes in question. *See Wolfchild v. United States* ("*Wolfchild II*"), 101 Fed. Cl. 54, 66 (2011), *reconsid. denied*, 101 Fed. Cl. 92 (2011), *aff'd & rev'd in part on other grounds*, 731 F.3d 1280 (Fed. Cir. 2013) (citing, *inter alia*, *Valley Forge Christian Coll. v. Americans United for Sep. of Church & State, Inc.*, 454 U.S. 464, 475 (1982)). All this requires reconsidering the standing ruling to correct clear errors and prevent manifest injustice for the thousands of Navajo families expressly protected by Section 11.

**C.    The Court's Identifiable-Group Ruling Requires Reconsideration Because It Misreads that the Indian Tucker Act's Plain Meaning and Supporting Cases Allow "Other" Not "Former" Groups, and Standing Law which Precludes the Nation from Representing the Beneficiaries as Constituents, as It Does Not.**

The Court held that the Beneficiaries cannot qualify as an "identifiable group of American Indians" under the Indian Tucker Act, 28 U.S.C. § 1505, because they are Navajo citizens and can sue as the Nation and are represented here by it. Op. at 14. The Court aptly acknowledged that "'[t]he controlling question is whether the claimant group can be identified and have a common claim.'" *Id.* (quoting *Chippewa*, 69 Fed. Cl. at 673). But the Court also ruled that "Plaintiffs fail to explain why the Nation cannot also assert the [B]eneficiaries' claims in a representative capacity" and that "Plaintiffs fail to identify any legal authority or case in which this Court or the Federal Circuit has held that members of a currently-recognized tribe constitute an 'identifiable group'" under the Indian Tucker Act. *Id.* at 14. The Court's latter rulings contravene the governing Act and legal authority so they must be reconsidered to allow the Beneficiaries to assert their claims.

First, the Court failed to identify and apply the Indian Tucker Act's plain meaning. The Act allows claims by "any tribe, band, or other identifiable group of American Indians residing within . . . the United States or Alaska[.]" 28 U.S.C. § 1505. The Act's plain meaning limits "other" groups only by requiring that they are (1) American residents, (2) identifiable, and (3) not a tribe or band. The Act uses the word "other"—not "former"—so those groups cannot be restricted to former tribes or bands. And just as "any tribe[ or] band . . . of American Indians" does not have any additional limit, neither may "other identifiable group[.]" Thus, the Act does not allow groups "excluding those with members of or that might be represented by recognized tribes." The statutory interpretation should have ended with this unambiguous plain meaning under *British Airways* and *Bell*, and any ambiguity there must be construed in the Beneficiaries' favor under *Blackfeet* and *Bear*. The Court clearly erred by grafting additional restrictions onto the Indian Tucker Act.

Controlling cases and other authority confirm this clear, common-sense construction. The only identified "identifiable group" ruling by Supreme Court is *Tee-Hit-Ton Indians v. United States* ("*Tee-Hit-Ton II*"), 348 U.S. 272 (1955). That rejected the merits of a taking claim by "an identifiable group of American Indians of between 60 and 70 individuals residing in Alaska," who were "a clan of the [existing, federally recognized] Tlingit Tribe, [and] brought this suit . . . under 28 U.S.C. § 1505[.]" *Id.* at 273. Below, the Federal Circuit's predecessor held that "the plaintiff [is] an 'identifiable group . . .' within the meaning of 28 U.S.C. § 1505" because "[t]here seems to be no difficulty in identifying the Tee-hit-ton as a group of persons" and "some, at least, of the land" at issue "was claimed by the plaintiff clan as a whole" when taken in 1951. *Tee-Hit-Ton Indians v. United States* ("*Tee-Hit-Ton I*"), 128 Ct. Cl. 82, 120 F. Supp. 202, 204 (1954), *aff'd*, 348 U.S. 272 (1955). *Wolfchild II* followed that "reading of the language within the . . . Act" and noted that Supreme Court observation. *Wolfchild II*, 101 Fed. Cl. at 81 & n.23. *Wolfchild II* explained that this historic statutory phrase "carr[ies] the precise meaning it does today, that is, an aggregation of identifiable American Indians but not necessarily a singular entity . . . . besides those known as tribes and bands." *Id.* at 81. *Wolfchild II* also noted that "regulations governing federal acknowledgement of Indian associations define an 'Indian group or group' as 'any Indian or Alaska Native aggregation within the continental United States that the Secretary of the Interior does not acknowledge to be an Indian tribe'" so "the term does not equate to a recognized, singular Indian entity . . . ." *Id.* (quoting 25 C.F.R. § 83.1). Thus, regulations and governing cases recognize that a "group" of Indians is no more than an aggregation of identifiable Indians other than a tribe.

Nor can resort to legislative history alter that plain meaning as the Court wrongly deduced. Op. at 12-13. "'Congress intended to enlarge the category of groups of Indians entitled to present claims . . . when it added'" that provision, to ensure "that all legitimate claims of the Indians against the United States be provided with a forum and the opportunity to be heard." *Chippewa*, 69 Fed.

Cl. at 671 (quoting *Thompson v. United States*, 122 Ct. Cl. 348, 360 (1952)). Indeed, Congress rejected removal of that provision because "'[t]he exclusion of any native group from the scope of this bill would not only be an unfair discrimination but would destroy the main objective of the bill[.]'" *Id.* at 672 (citation omitted). This broad reading of the Indian Tucker Act "persists to the present day," *Wolfchild II*, 101 Fed. Cl. at 81 (citing *Tee-Hit-Ton I*, 120 F. Supp. at 204, and *Chippewa*, 69 Fed. Cl. at 670-71). All that supports the Beneficiaries' group status. Yet here the Court here wrongly adopted Defendant's effort to gut the Indian Tucker Act despite that history.

Looking back even further reconfirms the proper statutory meaning. As the Court noted, the Indian Tucker Act derives from the former Indian Claims Commission Act ("ICCA"). Op. at 12-13. The ICCA allowed claims by "other identifiable group[s] of American Indians" "'to take [in] a simple group of Indians who have a common interest, who have suffered a common injury, but who may not heretofore have been recognized by any branch of the Government'" to "'satisf[y] the need to provide groups not generally regarded as constituting tribes an opportunity to assert claims against the Government[.]'" *N. Paiute Nation v. United States* ("*Northern Paiute*"), 10 Cl. Ct. 401, 408 (1986) (citations omitted). That easily encompasses the Beneficiaries since they are not like allottees who had "no communal identity apart from their membership in the Tribe" and so could not "properly be characterized as a group within the . . . [ICCA.]" *Id.* Moreover, "a claim does not become tribal merely because an identifiable group of the tribe's members were adversely affected, even if that group constituted all the members of the tribe." *Id.*

In sum, applying the Indian Tucker Act's clear and unambiguous meaning for "other identifiable group" should have led quickly to allowing the Beneficiaries' claims. The residency requirement is not at issue. For identifiability, the "controlling question" is only whether the claimant group can be identified and has a common claim. *Chippewa*, 69 Fed. Cl. at 673; *see Tee-Hit-Ton I*, 120 F. Supp. at 204. That cannot be disputed since Section 11(h) expressly defines the

Beneficiaries, the Relocation Act required ONHIR to identify them, which it largely has, and their claims here are common to the group. *See* 25 U.S.C. § 640d-10(h); 1974 Act § 13(a)-(b)(1), 88 Stat. 1717; Compl. ¶¶ 4-8, 11-15. Defendant does not contend that the Beneficiaries are a tribe or band, so they are an "other" group. Ruling that the Nation must (rather than merely might or may) represent this readily identifiable group is completely detached from the governing statutory text.

Second, the Court misread *Fletcher* and *Osage Tribe v. United States* ("*Osage II*"), 85 Fed. Cl. 162 (2008), to support its unfounded extra-statutory requirement. *Fletcher* did not address what constitutes an "identifiable group of Indians" under the Indian Tucker Act, as the Court noted. Op. at 14 (citing *Fletcher*, 26 F.4th at 1324). However, *Fletcher* held that an Indian tribe and its members can both assert their respective interests under a statutory trust, just as Plaintiffs do and ONHIR has admitted here. *Compare Fletcher*, 26 F.4th at 1324 *with* Compl. ¶¶ 8, 37, 47. For example, under Section 11(h), only the Beneficiaries have the sole legal "land-use interest" in the New Lands. Nothing in the Indian Tucker Act requires the Nation to represent them for that.

In turn, in *Osage*, "[i]mportantly, the alleged mismanagement . . . is described as taking place when the funds were within the tribal trust fund" "where they remain for 'approximately one calendar quarter'" and not after "distribution . . . to the individual headright holders" when "the Tribe may have no further interest or claim to the funds[.]" *Osage Nation v. United States* ("*Osage I*"), 57 Fed. Cl. 392, 395 (2003). *Osage I* denied a motion to dismiss about the Tribe's standing, noting "defendant's concern that any damages awarded to the Tribe would not 'flow down' to the headright holders . . . is addressed" by the law which protects their interests. *Id.* Five years later, *Osage II* denied the headright holders intervention as an identifiable group because the Osage Nation "already represented" them because the Osage Tribal Council's predecessor or successor-in-interest "is elected exclusively by Osage headright holders." *Osage II*, 85 Fed. Cl. at 167-68.

That is nothing like this case. The Nation and the Beneficiaries have jointly sued to assert

their undisputed discrete interests. *See* Compl. ¶¶ 5-8, 36-37, 37, 41, 47; MTD Resp. at 7-10. This avoids Defendant's above concern and motion. This also reflects that only the Nation has settled and waived its prior claims, Defendant has never communicated with the Beneficiaries about this trust, and only they can and do seek attorneys' fees for this lawsuit. *See* 28 U.S.C. § 2412(d)(2)(B); Compl. at 41 & ¶¶ 153-57, 160; MTD Resp. at 14-15; MTD Reply at 8 n.2. Also, the Nation does not and could not claim direct representation of the Beneficiaries. They are legally defined as Navajo families that resided on HPL in 1974 and comprise likely 20,000+ people that have mostly relocated variously. Compl. ¶¶ 6, 12, 17-18. In contrast, the Navajo Nation has over 399,000 enrolled citizens and the Navajo Nation Council represents all the Nation's 110 Chapters and is elected by all their respective participating 123,000+ registered Navajo voters. *See* Arlyssa Becenti, "Diné enrolled population increases to 399,494," Navajo Times, April 26, 2021, available at https://navajotimes.com/reznews/dine-enrolled-population-increases-to-399494/; 2022 Navajo Nation General Election Results, available at https://navajoelections.navajo-nsn.gov/2022-NN-GENERAL-ELECTION-RESULTS (providing hypertext links for Official Election Results: Navajo Nation Council, and Unofficial Election Results: Voter Participation Report).

Third, the Court's misreview of other cases reconfirms that its statutory misinterpretation requires reconsideration. Multiple cases have allowed group claims for Indians "outside of their identity as members of a specific tribe or band[,]" *Chippewa*, 69 Fed. Cl. at 672, including for members of current tribes that are also plaintiffs. Nor does inclusion of tribes as plaintiffs preclude group status. *Chippewa* allowed group claims, including for four currently recognized tribes and their members. *Id.* at 640, 665, 668. Tribes were allowed to join with individuals in representing the group because the tribes were either statutorily defined as group members or a successor to the Pembina Band. *Id.* at 668 (noting White Earth's longstanding, "formal connection with the original tribal plaintiffs"), 671 (quoting 1982 Distribution Act for other tribes). The fact that the Pembina

Band ceased to be a recognized tribe was not required for identifiable group status, as the Court here mistakenly read, it was simply that the group could not sue as that Band. *Compare id.* at 673 *with* Op. at 14. Also, White Earth's joinder with and formal connection to Pembina undercuts the Court's preclusive requirement here for tribal representation. Nor is there necessarily "an identity of interest" between the Nation and the Beneficiaries as there was for a period in *Chippewa*, 69 Fed. Cl. at 667, since "solely" the Beneficiaries have a legally protected "land-use interest."

   *Chippewa* also cited more cases which support the Beneficiaries. Namely, a group of the Creek Nation—a still-existing tribe—was allowed since it would "'be a strained and unwarranted interpretation . . . to say that'" a group "'must be identical, as a distinct entity, with the tribe or band[.]'" *Chippewa*, 69 Fed. Cl. at 673 (quoting *McGhee v. Creek Nation*, 122 Ct. Cl. 380, 391 (1952)). Likewise, "'[a]wards have often been entered for such unorganized or informal groups'" and, "'[s]ince the statute imposes no organizational requirement, there is no basis for creating one by judicial gloss.'" *Id.* (quoting *Red Lake & Pembina Bands v. Turtle Mtn. Band of Chippewa Indians* ("*Red Lake*"), 355 F.2d 936, 943 (Ct. Cl. 1965)). *Red Lake* went further: "Congress has said nothing about geographical propinquity, appearance on a common roll of Indians, recognition by the Secretary of the Interior, or any similar tie" and "gives us no leave to require such special indicia of communality." 355 F.2d at 943. Yet that is what the Court did, turning case descriptions into an extra-statutory legal prescription. But case facts cannot change a law's meaning.

   Other cases accord with *Chippewa* and governing precedent cited there despite the Court's clearly incorrect conclusion that there are no such cases. For example, the Court failed to address *Western Shoshone Identifiable Group v. United States* ("*Western Shoshone*"), 143 Fed. Cl. 545 (2019), on this issue despite Plaintiffs' reliance thereon. MTD Resp. at 11, 14 (citing 143 Fed. Cl. at 553, 593). As in *Chippewa*, that identifiable group included "enrolled member[s]" of three federal recognized "'successor'" tribes that were also plaintiffs. *Western Shoshone*, 143 Fed. Cl.

at 552-53, 584-85 (quoting statements by the Department of the Interior to Congress). The presence of those tribes did not preclude that group despite the fact that they were recognized successors to the former tribe, and Defendant there "conceded . . . after trial" a prior ruling on the group's ability to pursue claims separate from the recognized tribes, *id.* at 593.

The Court also missed or misread yet more cases cited by Plaintiffs. Op. at 13-14. The Court overlooked that *Snoqualmie Tribe v. United States*, 372 F.2d 951 (Ct. Cl. 1967), allowed identifiable group claims for people "'among the present-day Snoqualmie Tribe members[.]'" MTD Resp. at 13 (quoting 372 F.2d at 954, 964). The Court also overlooked that *Wolfchild* allowed claims for a group including members of currently recognized Indian tribes and intervention by a tribe with members within the group. *Id.* (citing *Wolfchild v. United States* ("*Wolfchild I*"), 72 Fed. Cl. 511, 514, 517, 520, 528, 532 (2006)). That group "overlapped but diverged" with three currently recognized tribes since "many of the beneficiary group were part of the communities" which "included many outside the beneficiary group." *Wolfchild v. United States*, 731 F.3d 1280, 1285, 1297 (Fed. Cir. 2013). While one tribe was allowed to intervene aligned with the group and two others were joined to assert their own interests, that did not eliminate the group's plaintiff status. *Wolfchild I*, 72 Fed. Cl. at 516. Contrary to the Court's conclusion, "[]like in *Chippewa* . . . and *Wolfchild*," and *Western Shoshone*, the recognized tribe of which the Beneficiaries are citizens "is [also] a party to this litigation." *Contra* Op. at 14. None of those cases rejected group status because of tribal citizenship or participation. And like those groups, the Beneficiaries "lack formal organization as a tribe" since they obviously are not the Nation itself. *Contra* Op. at 14.

Fourth, the requirement that the Nation represent the Beneficiaries is an extra-statutory affront to its sovereignty and their autonomy. Contrary to the Court's statement, Plaintiffs did in detail "explain why the Nation cannot also assert the [B]eneficiaries' claims in a representative capacity[.]" *Contra* Op. at 14. Namely, "when sovereigns assert claims for their citizens as such,

they are deemed to represent all their citizens." MTD Resp. at 12 (citing *S. Carolina v. N. Carolina*, 558 U.S. 256, 266 (2010)). (That "general rule[,]" *S. Carolina*, 558 U.S. at 266, limits tribes' representation of groups of their citizens. *E.g., United States v. Santee Sioux Tribe*, 254 F.3d 728, 734 (8th Cir. 2001); *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1291, 1311 (D.N.M. 2018), *appeal dism'd*, 2019 WL 13219820 (10th. Cir. 2019) ("'more must be alleged than injury to an identifiable group of individual[s]'").) Just as significant, such *parens patriae* claims cannot be asserted against the United States. Tr. at 40 (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982)); *N. Paiute*, 10 Cl. Ct. at 406 (same, citing additional cases). Also, while an identifiable group may be represented by members thereof, the Nation itself is not a member of the Beneficiaries. MTD Resp. at 14 (citing, *inter alia*, *Western Shoshone*, 143 Fed. Cl. at 553). The Court missed all that, and that all precludes its representation requirement.

The Court also failed to consider cited third-party standing limits. For instance, assertion of organizational standing requires "that the relevant individuals 'have standing to sue in their own right[.]'" MTD Resp. at 10 (quoting *Military-Vets. Advocacy v. Sec. of Veterans Affairs*, 7 F.4th 1110, 1122 (Fed. Cir. 2021) and citing *Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243, (N.D. Okla. 2016)). Absent that, the Nation could only assert claims for deceased or incapacitated Beneficiaries. *Id.* at 8 (citing *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017); *Irving*, 481 U.S. at 706, 709 (allotments); *Wilkinson v. United States*, 440 F.3d 970, 977 (8th Cir. 2006) (probate); *Fredericks*, 125 Fed. Cl. at 414 (same)). Instead, the Court's ruling turns on its head the "'principle of third-party standing [which] "limit[s] access to the federal courts to those litigants best suited to assert a particular claim"'" and "'"recognizes that . . . the third-party right-holder may not in fact wish to assert the claim in question."'" *Cheyenne & Arapaho Tribes v. United States*, 151 Fed. Cl. 511, 518 (2020) (quoting *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 965 (Fed. Cir. 2017)) (additional cites omitted). While the Court there required individuals rather

than their tribe to assert "bad men" treaty-clause claims, *id.* at 514, the Court here would only allow the Nation to assert the Beneficiaries' own legally protected group-based land-use interest. Nothing in the Indian Tucker Act or any other authority supports that unfounded conclusion.

Finally, reconsidering the Beneficiaries' group status cannot be avoided based on the possibility of proceeding under the regular Tucker Act because allowing their claims as a group is superior. In *Fletcher*, "there was no need to reach the question of Indian Tucker Act jurisdiction" for only four individual plaintiffs there because the court found jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), "although procedural advantages might come with proceeding under the Indian Tucker Act." *Fletcher*, 26 F.4th at 1317, 1324. Here, there are likely over 20,000 Beneficiaries, Compl. ¶¶ 7, 10-17, and they "do not sue as class representatives, . . . nor did Plaintiffs style the Complaint as a class action." MTD at 16 n.6 (citing Compl. ¶ 19). That is because a class action must be ""superior . . . for the fair and efficient adjudication of the controversy[,]"" but it is not compared to identifiable-group litigation under the Indian Tucker Act. MTD Resp. at 13-14 (quoting *Chippewa*, 69 Fed. Cl. at 669-70 & n.20 (quoting RCFC 23(b)(2))). Rather, the latter avoids "'delay for notification to all class members' and allows any damages awarded to be shared by the group, which need only be fully identified if there is a judgment for them." *Id.* at 14 (quoting *Chippewa*, 69 Fed. Cl. at 674). For all these reasons, the Court must reconsider its rulings on both standing and group status for the Beneficiaries.

**D.    The Grazing Trespass Ruling Requires Reconsideration for Clarification and to Correct an Impermissible Implied Self-Dealing Exception from ONHIR's Own Express Grazing Trespass Prohibition, Damages, and Penalties.**

In just two paragraphs, the Court dismissed what it captioned as "[a]ny claims for trespass damages and penalties from supposed trespass by the United States[.]" Op. at 25. But in explaining that ruling, the Court said that it was dismissing those grazing trespass claims only "to the extent that Plaintiffs were asking for trespass damages and penalties for the government's failure to issue

itself a grazing permit[.]" *Id.* Plaintiffs agree with the Court that they are not asserting the latter, most obviously because ONHIR's regulations prohibit it from issuing a grazing permit to itself. 25 C.F.R. § 700.711(a)-(b). Instead, Plaintiffs seek "trespass damages and penalties as a form of liquidated damages for the breach of the government's fiduciary duty regarding grazing" insofar as ONHIR is committing or allowing grazing trespass. Op. at 25; *see* Compl. ¶¶ 48-55; MTD Resp. at 33. Therefore, the ruling warrants reconsideration initially to clarify what precisely the Court is dismissing. If the ruling only dismisses an unasserted claim, that is not consequential. However, the Court in this also ruled that "the grazing regulations do not require the government to collect trespass damages against itself." Op. at 26. If by that the Court intends to insulate Defendant from damages and penalties expressly prescribed by ONHIR's regulations notwithstanding ONHIR's indisputable grazing trespass, that contravenes governing law and requires reconsideration.

First, there can be no dispute here that ONHIR is and has been committing actual—not merely "supposed"—trespass which violated its fiduciary duties. Only <u>enrolled</u> <u>adult</u> Navajo citizens who are New Lands <u>residents</u> and HPL <u>relocatees</u> may graze their <u>own</u> livestock there, and any other grazing is "prohibited" and constitutes "Livestock trespass[.]" 25 C.F.R. §§ 700.709, .711(a), .711(b)(1)-(4), .725(a). Despite those express prescriptions and prohibitions, and that ONHIR does not and cannot satisfy any of those five grazing prerequisites, ONHIR has grazed livestock on the New Lands for years, including horses and over 320 cattle. Compl. ¶¶ 41, 50-51. Nor has or could have ONHIR waived its regulations to allow this. *See* Compl. ¶ 43; 25 C.F.R. § 700.13(b). The Court "must accept all [these] factual allegations . . . as true[.]" Op. at 8.

On these undisputed facts, ONHIR is committing prohibited grazing trespass. One is liable for trespass on Indian lands if they intentionally cause a thing to enter or fail to remove it from those lands. *United States v. Milner*, 583 F.3d 1174, 1182-83 (9th Cir. 2009). And because

ignorance of the law is no excuse, trespass can be committed despite a mistaken belief that one has

a legal right to enter property. *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 646 (2015).

Second, this violation of an express regulatory prohibition categorically violates ONHIR's

fiduciary duty to administer New Lands grazing, so that grazing trespass claim must be allowed.

For almost a half-century at least (including in this case), Defendant has argued that its fiduciary

duties to Indians arise only where "there is an *express* provision" of a governing federal law or

document and that those duties are "limited by the precise terms" thereof. *Navajo Tribe v. United

States*, 624 F.2d 981, 987 (Ct. Cl. 1980); *see* MTD Reply at 9, 11. This includes arguing here that

Plaintiffs must "point to a substantive law that 'expressly' establishes a trust responsibility" and

that implementing regulations "expressly" define the contours of Defendant's responsibilities to

manage a resource. Def.'s Supp. Br. Supp. Its MTD 1 (Dec. 8, 2022), ECF No. 20; *see id.* at 5, 6,

8; Def.'s Resp. to Pl.'s Notice of Addtl. Authority 2 (Nov. 30, 2023), ECF No. 31. But numerous

cases have repeatedly rejected that federal trust duties are so limited. *E.g., Arizona v. Navajo

Nation*, 599 U.S. 555, 566 (2023); *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 178

(2011); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 474-76 (2003); *United States

v. Mitchell*, 463 U.S. 206, 226-27 (1983); *Navajo Tribe*, 624 F.2d at 987; *Jicarilla Apache Nation

v. United States*, 100 Fed. Cl. 726, 738 (2011) (concluding that it would require "a logic-defying

feat of legal gymnastics"); *see Ute Indian Tribe v. United States*, 99 F.4th 1353, 1368 (Fed. Cir.

2024). Given all that, enforceable trust duties cannot be less than expressly stated prohibitions.

Notwithstanding all that, where Plaintiffs here have properly alleged that ONHIR's grazing

trespass violates an express regulatory prohibition, the Court may have accepted that there is an

implied self-dealing exception to an express regulatory prohibition. All the above authorities

preclude that. Just as significant, the Court's ruling on this claim failed to address the two cited

controlling cases which recognize that an Indian trust beneficiary is entitled to recover where

Defendant commits self-dealing as here. MTD Resp. at 33-34 (addressing *Navajo Tribe v. United States*, 364 F.2d 320, 323-24 (Ct. Cl. 1966) and *Ottawa Tribe v. United States*, 166 Ct. Cl. 373, 380 (1964)). The Court's failure to consider all that requires reconsideration.

Finally, the case that the Court relied on for analysis of this claim was incomplete and does not support its ruling. As the Court noted, ONHIR's grazing trespass regulation prescribes specific amounts for penalties plus "'a reasonable value for damages to property injured or sustained.'" Op. at 4 (quoting 25 C.F.R. § 700.725). Also, "'[a]ll payments for such . . . penalties and damages shall be paid to [ONHIR's] Commissioner for use as a range improvement fund.'" *Id.* at 25 (quoting same). That is required because ONHIR's grazing regulations serve to preserve "the forage, the land, and the water resources on the New Lands" for "resettlement of Navajo Indians physically residing on the HPL to the New Lands." 25 C.F.R. § 700.705; Compl. ¶ 39. That also aptly compensates the Beneficiaries for reduced range value from grazing maladministration. *See* MTD Resp. at 34 (citing *White Mtn. Apache Tribe v. United States*, 11 Cl. Ct. 614, 666 (1987)).

Despite those mandates, the Court relied on rejection of trespass penalties in *Shoshone Indian Tribe v. United States* ("*Shoshone I*"), 52 Fed. Cl. 614 (2002). Op. at 26. But as the Court noted, that case only concerned a specific (BLM) regulation "stating that '[t]respassers will be liable for damages to the United States[.]'" *Id.* (quoting 43 C.F.R. § 9230). Critically, the Court failed to address Plaintiffs' argument that *Shoshone I* only "held that certain federal lands 'trespass regulations cited by the Tribes' did not entitle the Tribes to receive 'the penalties provided for[,]'" MTD Resp. at 33 (quoting *Shoshone I*, 52 Fed. Cl. at 628), and that "*Shoshone I* 'does not consider' other 'Acts or the duties arising thereunder[,]'" such as "where a different regulation imposed trespass duties[,]" *id.* (quoting *Shoshone Indian Tribe v. United States* ("*Shoshone III*"), 672 F.3d 1021, 1040-41 (Fed. Cir. 2012)). There is a material difference between liability merely "to the

United States" versus for "payments . . . for use as a range improvement funds" for lands that "shall be used solely for the benefit of" the Beneficiaries. All this requires reconsideration.

## II.    ABSENT RECONSIDERATION, PARTIAL FINAL JUDGMENT TO ALLOW AN APPEAL FOR CLAIMS BY THE BENEFICIARIES AND FOR ONHIR'S GRAZING TRESPASS IS WARRANTED UNDER RCFC 54(b) BECAUSE THOSE CLAIMS ARE DISCRETE AND THERE IS NO JUST REASON FOR DELAY.

### A.    Partial Final Judgment Should Be Entered for Ultimate Disposition of Separate Parties or Cognizable Claims Where Immediate Appeal Would Avoid a Lengthy Delay Without Risk of the Same Issue in a Later Appeal.

Like reconsideration, partial final judgment is governed by RCFC 54(b), though by the following separate first sentence thereof:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

This rule "'"relax[es] the restrictions upon what should be treated as a judicial unit for the purposes of appellate jurisdiction."'" *Connecticut Yankee Atomic Power Co. v. United States* ("*Connecticut Yankee*"), 142 Fed. Cl. 87, 89 (2019) (multiple citations omitted).

Per *Curtiss-Wright Corp. v. General Elec. Co.* ("*Curtiss-Wright*"), 446 U.S. 1 (1980), courts use a "two-part test to determine whether partial judgment under Rule 54(b) is warranted." *Connecticut Yankee*, 142 Fed. Cl. at 89-90.  "First, the court must 'determine that it is dealing with a "final judgment[.]"'" *Id*. at 90 (quoting *Curtiss-Wright*, 446 U.S. at 7). For that, the decision "'must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief,'" and "'it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the cour[se] of a multiple claim action."'" *Id*. (quoting *Curtiss-Wright*, 446 U.S. at 7). For example, denial of summary judgment does not foreclose trial and so is not an appealable judgment. *EcoFactor, Inc. v. Google LLC*, 104 F.4th 243, __, 2024 WL 2807318, *2 (Fed. Cir. June 3, 2024).

Second, "the court must find that there is no just reason for delay and 'take into account

the judicial administrative interests as well as the equities involved[,]'" *Connecticut Yankee*, 142 Fed. Cl. at 90 (quoting *Curtiss-Wright*, 446 U.S. at 8). That includes considering the "'separateness of the claims for relief[,]'" such that "'sound case management may warrant entry of partial final judgment" even for "'claims that arise out of the same transaction or occurrence[.]'" *Id*. (citations omitted). Thus, even with "overlap in the backstory[,]" claims that are "analytically distinct from" remaining claims may warrant partial judgment. *Pauma Band of Luiseno Mission Indians v. California*, 343 F. Supp. 3d 952, 987 (S.D. Cal 2018), *aff'd*, 973 F.3d 953 (9th Cir. 2020).

Under this standard, partial final judgment is warranted where there is "'"'some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'"'" *Abbey v. United States*, 101 Fed. Cl. 239, 242 (2011) (citations omitted). For example, where a dismissal order completely disposes of a plaintiff's claims, partial judgment will avoid the hardship and injustice of a later remand or retrial if an appeal reverses that dismissal. *D & J Investments of CENLA, LLC v. Baker Hughes A G E Co., LLC*, 52 F.4th 187, 194 (5th Cir. 2022). Likewise, partial final judgment is warranted if "the timing for resolution of the remaining . . . claims is currently unclear" or "'the complex nature of the remaining claims could . . . mean a delay that would span many months, if not years.'" *Koopmann v. United States*, 151 Fed. Cl. 805, 808 (2021) (quoting *Curtiss-Wright*, 446 U.S. at 6). That entails considering "the negative effects of requiring plaintiffs to fully litigate the entire case" given "the prolonged expected length of litigation[.]" *Connecticut Yankee*, 142 Fed. Cl. at 91. That especially applies where "plaintiffs have to bear all the costs of postponement[,]" *Consol. Coal Co. v. United States* ("*Consolidated Coal*"), 75 Fed. Cl. 537, 539 (2007), or where a case is significant to a federal program, *PGBA, LLC v. United States*, 60 Fed. Cl. 567, 570 (2004). In contrast, there is just reason for delay where appellate courts may have to decide the same issues more than once if there are subsequent appeals. *Abbey*, 101 Fed. Cl. at 242 (citing *Curtiss-Wright*, 446 U.S. at 8). The latter includes "conflicting contract interpretations or

liability for damage categories[.]" *Connecticut Yankee*, 142 Fed. Cl. at 90, 91.

    **B.**    **Dismissal of the Beneficiaries is Clearly a Final Judgment for Them, and Their Standing, Group Status, and Pre-2014 Settlement Claims Are Discrete So Their Appeal Should Not Be Delayed Many Years for the Remaining Claims.**

If the Court denies reconsideration for the Beneficiaries' standing and identifiable-group status, the complete dismissal of their claims for lack of subject-matter jurisdiction plainly constitutes a final judgment against them. *See* Op. at 8-14. This readily satisfies the first part of the test for entry of partial final judgment regarding the Beneficiaries.

In that instance, the Court should expressly determine there is no just reason for delaying entry of final judgment against the Beneficiaries. First, their claims and the adjudicated issues regarding them are separate and discrete from the remaining claims. The Court dismissed the Beneficiaries' claims based on standing and identifiable-group status. Op. at 8-14. Those issues do not affect the Nation. *See id.* Also, "the United States did not argue that the Nation's Tribal trust settlement waived and released the [Beneficiaries]' claims[,]" MTD Reply at 8 n.2, and "the Court agree[d] with Plaintiffs that any pre-2014 Settlement claims present in the complaint are those of the beneficiaries, not the Nation." Op. at 15; *see* Compl. ¶¶ 157, 160; MTD Resp. at 14-15; Tr. at 29-30. With that, the Beneficiaries' dismissed exclusive, pre-settlement claims are separable chronologically from the remaining overlapping post-settlement claims. *See* Tr. at 28.

Second, both equities and judicial administrative interests support partial final judgment for the Beneficiaries. There is no risk of appeals having to decide issues twice or conflicting later determinations since standing and identifiable-group status only concern the Beneficiaries. There also would be tremendous hardship for all and particular injustice for the Beneficiaries if their appeal is delayed until after trial. Defendant only recently filed its Answer, discovery has yet to begin, and the numerous remaining claims almost certainly will require prolonged litigation. In addition, "Congress created a completely separate, independent agency in the Executive Branch

to administer the New Lands." Op. at 22 (citing 25 U.S.C. § 640d-11(a)). Yet ONHIR continues to maladminister the New Lands despite its "ongoing and current fiduciary duty to 'administer[]'" them, *id.* at 20 (quoting 25 U.S.C. § 640d-10(h)), "solely for the [Beneficiaries'] benefit[,]" 25 U.S.C. § 640d-10(h). *See, e.g.,* Compl. ¶¶ 51, 69, 109 & p. 41. Moreover, the Court has denied Defendant's motion to dismiss regarding Plaintiffs' request for remand for ONHIR to properly administer the New Lands and revenue therefrom. *See id.* at 41; Op. at 26. Thus, this case is significant to that federal program per *PGBA, LLC,* and Plaintiffs would have to bear all the costs of postponement per *Consolidated Coal.* All that would be compounded if a deferred appeal reverses and remands for more discovery, pre-trial proceedings, and another trial after the rest of the case is litigated. All that delay, harm, and hardship would be alleviated only by immediate appeal, which would aid all parties and this Court by promptly finally resolving the Beneficiaries' ability to assert their claims. For all these reasons, the Beneficiaries' claims warrant entry of partial final judgment without delay if the Court does not reconsider them as it should.

   C.   **The Court's Potential Dismissal of the Discrete ONHIR Grazing Trespass Claim Also Warrants Entry of Partial Final Judgment to Avoid Delay Because the Remaining Grazing Claims Do Not Also Involve Self-Dealing.**

      If the Court does not clarify or otherwise reconsider its ruling on grazing self-dealing, that that would dismiss Plaintiffs' claim that ONHIR's obvious, ongoing grazing trespass makes Defendant liable for expressly required trespass damages and penalties. In that instance, the Court should enter partial final judgment on the grazing self-dealing claim under RCFC 54(b).

      The Court also should expressly determine there is no just reason for delaying entry of final judgment for the grazing self-dealing claim. First, even though there "overlap in the backstory[,]" the grazing self-dealing claim is "analytically distinct" and therefore legally separate from the remaining grazing claims. *Pauma Band*, 343 F. Supp. 3d at 987. That claim specifically and discretely concerns ONHIR's own trespass. Compl. ¶¶ 50-51. In contrast, the remaining grazing

claims concern other New Lands grazing maladministration, including allowing illegal third-party livestock trespass, not allowing Beneficiaries to graze livestock when warranted, and ONHIR's other failures to comply with its own grazing regulations to fulfill its federal trust responsibility for long-term sustained yield and use of the New Lands for the Beneficiaries. *Id.* ¶¶ 39-48, 53-58.

Second, both equities and judicial administrative interests support partial final judgment for the grazing self-dealing claim. Entry of final judgment on this claim would not result in an appellate court having to decide the same issue twice since no other claim involves grazing self-dealing. There also would be tremendous hardship for all and particular injustice for the Beneficiaries if an appeal of this claim is delayed until after trial. ONHIR is committing trespass on about 60,000 acres of about 352,000 acres—or over 17%—of the New Lands within the Nahata Dziil Chapter. *See id.* ¶¶ 17, 27, 29. That Chapter is solely populated by the Beneficiaries, who are exclusively authorized to graze livestock there, and other lands there are used for residential, governmental, and commercial purposes. *See id.* ¶¶ 27-29, 41, 49-51. As noted above, Defendant only recently filed its Answer, discovery has yet to begin, and the numerous remaining claims almost certainly will require prolonged litigation. Continuing to deprive the Beneficiaries of grazing for likely many more years on likely far more than 20% of their resident Chapter's exclusive usable grazing land will continue to severely harm them. All that would be compounded if a deferred appeal reverses and remands for more discovery, pre-trial proceedings, and another trial for that claim. All that delay, harm, and hardship would be alleviated only by immediate appeal, which would aid the parties and this Court by promptly finally resolving whether ONHIR may commit grazing trespass without being subject to its own expressly mandated damages and penalties. All that satisfies the standards for partial final judgment under *Koopmann*, *Connecticut Yankee*, and *Consolidated Coal*. For all these reasons, the grazing self-dealing claim warrants entry of partial final judgment without delay if the Court does not reconsider that as it should.

**III.    ABSENT RECONSIDERATION OR PARTIAL FINAL JUDGMENT, THE COURT SHOULD CERTIFY ITS RULINGS ON THE BENEFICIARIES AND GRAZING SELF-DEALING PER 28 U.S.C. § 1292(d)(2), SINCE THOSE INVOLVE CONTROLLING LEGAL QUESTIONS FOR WHICH OPINIONS DIFFER AND IMMEDIATE APPEAL WOULD ADVANCE THIS LITIGATION.**

**A.    For Interlocutory Appeal, the Court Must Certify That Issues Involve a Controlling Question of Law for Which There is Substantial Ground for Difference of Opinion and Immediate Appeal May Materially Advance Ultimate Termination of the Litigation.**

This Court has discretion whether to certify an issue for an interlocutory appeal, *Starr Int'l Co., Inc. v. United States*, 112 Fed. Cl. 601, 603 (2013), though such appeals are "reserved for 'exceptional' or 'rare' cases and should be authorized only with great care." *Klamath Irr. Dist. v. United States* ("*Klamath I.D.*"), 69 Fed. Cl. 160, 161 (2005) (citing multiple cases). In particular,

> when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that [1] a controlling question of law is involved [2] with respect to which there is a substantial ground for difference of opinion and that [3] an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2); *Doe No. 1 v. United States*, 163 Fed. Cl. 608, 612 (2023) (numbering same), *interloc. certif. pet. granted*, 2023 WL 2609124 (Fed. Cir. March 23, 2023); *Klamath I.D.*, 69 Fed. Cl. at 162 (same). Interlocutory appeal without that certification will be dismissed for lack of appellate jurisdiction. *Aleut Tribe v. United States*, 702 F.2d 1015, 1019 (Fed. Cir. 1983).

For the first criterion, questions are "controlling" when their resolution "would 'materially affect issues remaining to be decided in the trial court'" and "dictate[] which direction the litigation will take." *Doe No. 1*, 163 Fed. Cl. at 612 (quoting *Coast Fed. Bank, FSB v. United States* ("*Coast Fed. Bank*"), 49 Fed. Cl. 11, 13 (2001) and citing other cases). For example, "standing and subject-matter jurisdiction" meet that criterion since they are "justiciability issues . . . that could end the plaintiffs' lawsuit." *Fairholme Funds, Inc. v. United States* ("*Fairholme*"), 147 Fed. Cl. 126, 130

31

(2020), *aff'd in part & rev'd in part*, 26 F.4th 1274, 1283 (Fed. Cir. 2022) (accepting certification); *Fisher v. United States*, 149 Fed. Cl. 204, 206 (2020) (following *Fairholme*). Also, "[i]ssues of statutory interpretation are questions of law that are appropriate for certification" for interlocutory appeal. *Salman Ranch Ltd. v. United States* ("*Salman Ranch*"), 89 Fed. Cl. 653, 655 (2007). Moreover, "a question of law can be controlling even if resolving it leaves factual issues for resolution in the lower court." *Doe No. 1*, 163 Fed. Cl. at 612 n.5 (citing cases).

For the second criterion, there are "substantial grounds for a difference of opinion" when there are "actual disagreements of federal courts" or "the law is subject to 'two different, but plausible, interpretations[.]'" *Id.* at 613 (citing *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1374 (Fed. Cir. 2001) and quoting *United Launch Servs., LLC v. United States*, 139 Fed. Cl. 721, 724 (2018) (quoting *Klamath I.D.*, 69 Fed. Cl. at 163)). For example, that applies "when there is a circuit split or the parties dedicated extensive briefing to the topic." *Fairholme*, 147 Fed. Cl. at 130 (citing, *inter alia*, *Klamath I.D.*, 69 Fed. Cl. at 163). That also applies for "'thorny legal issues'" that are "an 'intellectual feast[.]'" *Id.*; *see Doe No. 1*, 163 Fed. Cl. at 613 (citing same and *Coast Fed. Bank*, 49 Fed. Cl. at 14). It also applies when there is "an intracircuit conflict," a conflict with a Supreme Court case, or "a substantial difference of opinion among the judges of this court[.]" *Klamath I.D.*, 69 Fed. Cl. at 163.

For the third criterion, an interlocutory appeal may materially advance ultimate termination of the litigation when it could provide "[a] definitive answer" that could "lead to a faster and more efficient resolution of the case." *Doe No. 1*, 163 Fed. Cl. at 613. "The focus here is, 'in large part[,] on considerations of "judicial economy" and the need to avoid "unnecessary delay and expense" and "piecemeal litigation."'" *Fairholme*, 147 Fed. Cl. at 130 (quoting *Coast Fed. Bank*, 49 Fed. Cl. at 14 (quoting *Northrop Corp. v. United States*, 27 Fed. Cl. 795, 798-99 (1993))). For example, this criterion is satisfied when possible reversal of dismissal of claims would "conserve

resources because . . . the parties will be able to consolidate their discovery efforts for the overlapping aspects of the [otherwise dismissed and remaining] claims." *Id.* at 130-31. That also applies when the appeal may avoid "'extensive unnecessary proceedings.'" *Lummi Tribe v. United States*, 870 F.3d 1313, 1315 (Fed. Cir. 2017) (citing order granting interlocutory appeal petition). This criterion also is met when an interlocutory appeal may avoid a later appeal "after a final judgment" pursuant to which "the case would have to be remanded for additional proceedings, and possibly more discovery" concerning the disputed issue. *Doe No. 1*, 163 Fed. Cl. at 612-13.

**B.     The Court's Rulings on the Beneficiaries' Standing and Group Status Should Be Certified for Interlocutory Appeal Because They Concern Justiciability, They Conflict with Extensive Precedent, and an Appeal Now Will Facilitate Discovery and Avoid a Later Appeal and Remand for Additional Proceedings.**

Dismissal of the Beneficiaries based on standing and group status readily satisfies the criteria for interlocutory appeal for each of those rulings. First, both rulings expressly concern subject-matter jurisdiction. Op. at 8, 12. Each of those rulings plainly is "controlling" because it "'materially affect[s] issues remaining to be decided in the trial court'" and "dictates which direction the litigation will take." *Doe No. 1*, 163 Fed. Cl. at 612 (citations omitted). Namely, those "standing and subject-matter jurisdiction" rulings meet that criterion since they are "justiciability issues" that categorically end the Beneficiaries' claims. *Fairholme*, 147 Fed. Cl. at 130. Those rulings also both concern certifiable questions of statutory interpretation under *Salman Ranch*.

Second, there is "substantial ground for difference of opinion" about both standing and identifiable-group status here since the Court's rulings contravene a plethora of precedent. As explained above, the Beneficiaries have an acknowledged "land-use interest" in the New Lands, Op. at 10, ONHIR has acknowledged that it "'has a fiduciary responsibility to manage'" those for them and they could litigate their rights about that, Compl. ¶¶ 37, 47, and they have been hugely harmed by that, *id.* ¶¶ 55, 69, 89, 129, 141. The Court's failure to find that all that establishes their

standing contravenes *AHM*, *Warth*, *Tanner-Brown*, and *Wolfchild II*. Also, the Court's failure to find that the New Lands constitutes a trust corpus that "shall be used solely for the benefit of" the Beneficiaries contravenes standing principles in *North Carolina Department of Revenue*, *Irving*, *LeBeau*, and *Fredericks*. In turn, the Court's group-status ruling contravenes *Tee-Hit-Ton I* and *II*, *Snoqualmie Tribe*, *Western Shoshone*, *Wolfchild I* and *II*, and *Chippewa*, as well as *Sessions*, *Irving*, *Starr International* (2017), *Cheyenne & Arapaho Tribes*, and *Fredericks*. And both rulings breach basic rules of statutory interpretation under *Bell*, *Bear*, *Blackfeet*, and *British Airways*.

Third, an interlocutory appeal would materially advance ultimate termination of this case. Namely, possible reversal of dismissal of the Beneficiaries' discrete pre-2014 settlement claims would "conserve resources because . . . the parties will be able to consolidate their discovery efforts for the overlapping aspects of" those and the Nation's remaining post-2014 settlement claims. *Fairholme*, 147 Fed. Cl. at 130-31. Allowing an interlocutory appeal now also may avoid a later appeal after a final judgment on the Nation's claims, pursuant to which "the case would have to be remanded for additional proceedings, and possibly more discovery" concerning the Beneficiaries' claims. *Doe No. 1*, 163 Fed. Cl. at 612-13.

**C.    The Dismissal of the Grazing Self-Dealing Claim Also Should Be Certified for Interlocutory Appeal Because It Likewise Involves a Controlling Legal Question, It Conflicts with Precedent, and an Appeal Now Will Facilitate Discovery and Avoid a Later Appeal and Remand for Additional Proceedings.**

If not clarified or corrected on reconsideration, the Court's dismissal of the grazing self-dealing claim also warrants certification for interlocutory appeal. First, that ruling presents a controlling question on when a federal agency can be held liable for violating its own trespass prohibition. That will materially affect issues remaining to be decided in this case and dictate which direction this litigation will take. Namely, that will control what damages and if any penalties may be imposed based on ONHIR's maladministration of New Lands grazing via its own trespass.

34

Second, there is substantial ground for difference of opinion on this issue. As explained above, the Court's ruling misreads *Shoshone I* and overlooks *Shoshone III*, *White Mountain Apache Tribe* (1987), *Navajo Tribe* (1966), and *Ottawa Tribe*. The Federal Circuit and its predecessor recognize that Defendant can be held liable in trespass and for self-dealing. Yet this Court's ruling insulates ONHIR from that. The Federal Circuit may well view this differently.

Finally, interlocutory appeal of the grazing self-dealing claim would materially advance ultimate termination of this case. The parties and the Court would benefit from an appellate ruling to guide further proceedings on this claim. This also would conserve resources because the parties will be able to consolidate their discovery efforts for overlapping factual aspects of this and other grazing claims. Otherwise, the parties could begin likely extensive and expensive discovery and then substantive adjudication that may be only partial if later appellate review reverses this Court's recent ruling. Allowing interlocutory appeal now thus may avoid a later appeal after final judgment which could lead to a remand for additional discovery by the parties and additional consideration by this Court. It would be far more efficient to allow the Federal Circuit an opportunity first to determine what grazing trespass prohibitions and prescriptions apply to Defendant.

## CONCLUSION

For all the above reasons, the Court should reconsider under RCFC 54(b) its rulings that the Beneficiaries lack standing to assert claims and are not an identifiable group under the Indian Tucker Act and that Defendant may not be held liable for grazing trespass damages and penalties. Alternatively, the Court should expressly determine there is no just reason for delay and enter partial final judgment for that party and that claim under RCFC 54(b). And absent such reconsideration or partial final judgment for that party and that claim, the Court should certify its rulings on those matters for interlocutory appeal under 28 U.S.C. Section 1292(d)(2).

Respectfully submitted July 3, 2024.

/s/Daniel I.S.J. Rey-Bear
Daniel I.S.J. Rey-Bear, Attorney of Record
Timothy H. McLaughlin, Of Counsel
Rey-Bear McLaughlin, LLP
421 W Riverside Ave, Suite 1004
Spokane, WA 99201-0410
telephone: 509-747-2502
dan@rbmindianlaw.com
tim@rbmindianlaw.com

Of Counsel

Ethel B. Branch, Attorney General
Heather L. Clah, Deputy Attorney General
Office of the Attorney General
Navajo Nation Department of Justice
P.O. Box 2010
Window Rock, Navajo Nation (AZ) 86515
telephone: 928-871-6345
ebranch@nndoj.org
hclah@nndoj.org

Susan Eastman, Principal Attorney
Western Navajo Agency Office - NHLSP
Economic & Community Development Unit
Navajo Nation Department of Justice
P.O. Box 2990
Tuba City, Navajo Nation (AZ) 86045
telephone: 928-283-3301
seastman@nndoj.org

Christina S. West
Tierra N. Marks
Barnhouse Keegan Solimon & West LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM  87107
telephone: 505-938-9144
cwest@indiancountrylaw.com
tmarks@indiancountrylaw.com

36