UNITED STATES COURT OF FEDERAL CLAIMS

NAVAJO NATION, *et al.*,

      Plaintiffs,

    v.                                                                                    No. 21-1746-ZNS

UNITED STATES,

      Defendant.


NAVAJO NATION'S VERIFIED
MOTION TO COMPEL DISCOVERY

Daniel I.S.J. Rey-Bear
Rey-Bear McLaughlin, LLP
421 W Riverside Ave, Suite 1004
Spokane, WA 99201-0410
telephone: 509-747-2502
dan@rbmindianlaw.com

Lead Attorney


March 24, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

BACKGROUND .............................................................................................................. 1

ARGUMENT .................................................................................................................. 6

I.    The RCFC Authorize This Court To Compel Proportional, Relevant Requested Discovery for Which Defendant Has Failed To Provide Specific Supported Objections ....................................................................................................6

II.    Defendant Must Search for and Produce "All" Relevant Documents "Concerning" Requested Matters, Including Unprivileged Agency Counsel Communications ................8

III.    The Nation's Pre-August 2014 Discovery Requests Remain Relevant Under FRE 401 and Proportional Under RCFC 26(b)(1) Regardless of Defendant's Blanket Objection Based on Waiver of Earlier Claims....................................................................10

IV.    Defendant Also Must Produce Requested Documents About Governing Authorities Regardless of Date Since Those Also Are Relevant and Proportional ............................. 13

V.    Defendant Cannot Dispute the Relevance of Information and Records About § 10(h)'s Mandate That the New Lands "Shall Be Used Solely for the Benefit of" Relocation Beneficiaries Since That Is an Essential Part of New Lands Administration ............................................................................................ 15

VI.    Defendant Must Produce Documents Concerning Discharge of ONHIR's Functions Since That Concerns a Core Aspect of Ongoing New Lands Maladministration ............ 17

VII.    Defendant Must Produce ONHIR's SF135s Since RFP 27 Properly Encompasses Those.................................................................................................... 18

VIII.    If The Court Grants This Motion To Compel, The Nation Is Entitled To Reasonable Expenses Including Attorneys' Fees Under RCFC 37(a)(5)(A)...................................... 20

CONCLUSION................................................................................................................21

VERIFICATION..............................................................................................................22

EXHIBIT LIST ...............................................................................................................23

i

# TABLE OF AUTHORITIES

**STATUTES**

25 U.S.C. §§ 640d to 640d-31 ............................................................................................. 1

25 U.S.C. § 640d-10(h) ........................................................................................... 1, 6, 16, 17

25 U.S.C. § 640d-11 ............................................................................................................ 3

25 U.S.C. § 640d-11(c)(2)(A) ............................................................................................... 2

25 U.S.C. § 640d-11(f) ........................................................................................................ 17

28 U.S.C. § 1491(a)(2) ........................................................................................................ 18

28 U.S.C. § 1746 ................................................................................................................. 4

Federal Records Act, 44 U.S.C. § 3101 ............................................................................... 19

Navajo and Hopi Indian Relocation Amdts. Act of 1980, Pub. L. 96-305, 94 Stat. 929 ................ 4

Navajo and Hopi Indian Relocation Amdts. of 1988, Pub. L. 100-666, 102 Stat. 3929 ................ 4

Non-Intercourse Act, 25 U.S.C. § 177 .................................................................................. 2

Public Law 99-190, 99 Stat. 1185, 1236 (1985) ..................................................................... 2

**REGULATIONS**

25 C.F.R. Part 169 .............................................................................................................. 18

25 C.F.R. § 169.110 ............................................................................................................ 18

25 C.F.R. § 169.413 ............................................................................................................ 13

25 C.F.R. § 700.1(b) ............................................................................................................. 9

25 C.F.R. § 700.77 .............................................................................................................. 18

25 C.F.R. § 700.114 ............................................................................................................ 18

25 C.F.R. § 700.135(b)(5) .................................................................................................... 10

25 C.F.R. § 700.219(a) ...................................................................................................... 2, 16

25 C.F.R. § 700.239(c)(9) .................................................................................................... 10

25 C.F.R. § 700.261(d) ........................................................................................................ 10

25 C.F.R. § 700.262(e)..................................................................................................... 10

25 C.F.R. § 700.303(a)..................................................................................................... 10

25 C.F.R. § 700.305 ......................................................................................................... 10

25 C.F.R. § 700.321 ......................................................................................................... 10

25 C.F.R. § 700.537(c)..................................................................................................... 10

25 C.F.R. § 700.701(b) ...................................................................................................... 2

25 C.F.R. § 700.725 ......................................................................................................... 13

25 C.F.R. § 700.815(a)(1)(v) ........................................................................................... 10

25 C.F.R. § 700.837 ......................................................................................................... 10

36 C.F.R. § 1220.30(a)..................................................................................................... 19

36 C.F.R. § 1233.10(c), (d).............................................................................................. 19

**RULES**

Federal Rule of Evidence 401 ................................................................................... 6, 7, 10

Rule of the Court of Federal Claims ("RCFC") 7.3........................................................... 1

RCFC 15(c)....................................................................................................................... 10

RCFC 26(b)(1) ....................................................................................................... 7, 10, 15

RCFC 26(b)(3)(B).............................................................................................................. 10

RCFC 33(a)(2) .................................................................................................................... 7

RCFC 33(b)(4) .................................................................................................................... 8

RCFC 34 .............................................................................................................................. 7

RCFC 34(b)(1)(A) ............................................................................................................. 10

RCFC 34(b)(2)(C).............................................................................................................. 8

RCFC 35(b)(4) ................................................................................................................... 10

RCFC 37(a)......................................................................................................................... 1

RCFC 37(a)(1) .................................................................................................................... 1

RCFC 37(a)(3)(B)(iii)-(iv).......................................................................................................... 8

RCFC 37(a)(4) ......................................................................................................................... 8

RCFC 37(a)(5)(A)................................................................................................................... 20

RCFC 37(a)(5)(A)(i)-(iii)....................................................................................................... 20

RCFC 37(b)(1)-(2) ................................................................................................................. 10

RCFC 83.2(g)(2)(A) ............................................................................................................... 10

RCFC App. A ¶ 3(d) .............................................................................................................. 10

RCFC App. A ¶ 5.................................................................................................................... 10

**CASES**

3rd Eye Surveillance, LLC v. United States, 158 Fed. Cl. 216 (2022)......................................7, 8

Advanced Powder Sols., Inc. v. United States, 160 Fed. Cl. 575 (2022) ..................................7, 13

BAE Systems Norfolk Ship Repair, Inc. v. United States, 163 Fed. Cl. 217 (2022)...............14, 17

Begay v. United States, 16 Cl. Ct. 107 (1987)...................................................................................9

Citizens for Responsib. & Ethics in Wa. v. U.S. Dep't of Justice,
     538 F. Supp. 3d 124 (D.D.C. 2021) ..........................................................................................9

Construction Helicopters Inc. v. United States, 169 Fed.Cl. 102 (2024) ......................................10

Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480 (2009).....................................................8

Equal Rights Ctr. v. Post Props., Inc., 246 F.R.D. 29 (D.D.C. 2007)...........................................10

Giesecke & Devrient Gmbh v. United States, 174 Fed. Cl. 532 (2025)...................................7, 11

Gilead Sciences, Inc. v. United States, 158 Fed. Cl. 415 (2022)..................................9, 11, 13, 14

Goodeagle v. United States, 111 Fed. Cl. 716 (2013) ....................................................................13

Herrmann v. United States, 127 Fed. Cl. 22 (2016) ....................................................................7, 9

Jenkins v. United States, 90 Fed.Cl. 585 (2009)..............................................................................8

Jicarilla Apache Nation v. United States, 100 Fed. Cl. 726 (Fed. Cl. 2011) ................................14

K-Con Bldg. Sys., Inc. v. United States, 106 Fed. Cl. 652 (2012) ............................................8, 19

Kansas City Power & Light Co. v. United States, 139 Fed. Cl. 546 (2018)..........................8, 9, 11

Loper Bright Enters. v. Raimondo, 602 U.S. 369 (2024) ............................................................14

Navajo Nation v. United States, 171 Fed. Cl. 246 (2024), reconsid.
   & interloc. appeal denied, 175 Fed. Cl. 114 (2025)................................................ 2-3, 14, 16, 18

Oenga v. United States, 91 Fed. Cl. 629 (2010) ...........................................................................13

Oglala Sioux Tribe v. United States, 21 Cl. Ct. 176 (1990) .........................................................19

Parker v. United States, No. 8:18CV123, 2020 WL 729211 (D. Neb. 2020)........................... 12-13

Perfect Form Mfg. LLC v. United States, 142 Fed. Cl. 778 (2019) ..............................................11

Shepard v. Quillen, 840 F.3d 686 (9th Cir. 2016) .........................................................................3

Shoshone Indian Tribe v. United States, 672 F.3d 1021 (Fed. Cir. 2012)................................3, 13

Sucic v. Wilkie, 921 F.3d 1095 (Fed. Cir. 2019).........................................................................16

Ute Indian Tribe of the Uintah & Ouray Indian Reservation
   v. United States, 145 Fed. Cl. 609 (2019).................................................................................13

## OTHER AUTHORITIES

Natl. Archives & Records Admin., SF135, Records Transmittal and Receipt (Rev. 7-85),
   available at https://www.archives.gov/files/frc/forms/sf-135.pdf .............................................18

S. Hrg. Rep. No. 109-183 (2005)...................................................................................................9

U.S. Dep't of Justice, FY2026 Budget & Performance Summary (June 13, 2025) .....................12

Per Rule 37(a) of the Rules of the Court of Federal Claims ("RCFC"), Plaintiff the Navajo Nation ("Nation") hereby moves to compel discovery responses by Defendant the United States ("Defendant") for the Nation's First Sets of Interrogatories ("Interrogatories") and Requests for Production ("the RFPs"), which were served in April 2025. Per RCFC 7.3 and 37(a)(1), the Nation in good faith has conferred with Defendant to attempt to obtain relevant, proportional discovery without Court action and to narrow disagreement. However, Defendant opposes the relief sought here. Now eleven months after service of its discovery requests, the Nation still has not received adequate discovery responses from Defendant. This includes Defendant's failures to fully provide the following categories of documents and information for which the Court should now compel discovery responses: (1) "all" responsive documents and information "concerning" referenced matters, including without limitation all agency counsel policy memos and not just self-selected responsive documents by Defendant; (2) New Lands administration and revenue predating August 26, 2014 ("August 2014") relevant to post-August 2014 claims; (3) governing legal authorities for New Lands administration regardless of date; (4) implementation of the mandate in former 25 U.S.C. § 640d-10(h) ("§ 10(h)") that the New Lands provided for there "shall be used solely for the benefit of Navajo families residing on Hopi-partitioned lands as of December 22, 1974" (the "Relocation Beneficiaries"); (5) whether or when federal statutory responsibilities are or will be fully discharged under former 25 U.S.C. §§ 640d to 640d-31 (the "Relocation Act"); and (6) copies of Standard Form 135, Records Transmittal and Receipt ("SF135s") completed by the Office of Navajo and Hopi Indian Relocation to transfer records to a National Archives and Records Administration ("NARA") Federal Records Center.

**BACKGROUND**

The Complaint in this case in large part seeks damages for prior failures and a remand for future compliance with § 10(h), which prescribes the following:

1

> The lands transferred or acquired pursuant to this section shall be administered by the Commissioner until relocation under the Commission's plan is complete and such lands shall be used solely for the benefit of Navajo families residing on Hopi-partitioned lands as of December 22, 1974: *Provided*, That the sole authority for final planning decisions regarding the development of lands acquired pursuant to this subchapter shall rest with the Commissioner until such time as the Commissioner has discharged his statutory responsibility under this subchapter.

25 U.S.C. § 640d-10(h); Compl. ¶¶ 1, 31-37 & p. 41 (citing original page number), Dkt. No. 1; *Navajo Nation v. United States* ("*Navajo I*"), 171 Fed. Cl. 246, 254-56, 272 (2024), *reconsid. & interloc. appeal denied on other grounds*, 175 Fed. Cl. 114 (2025). The referenced lands are defined as the "New Lands," 25 C.F.R. § 700.701(b), and the referenced agency and officer are the Office of Navajo and Hopi Indian Relocation, its predecessor, and their leader (together, "ONHIR"), 25 U.S.C. § 640d-11. The Complaint also alleges that ONHIR's administration of the New Lands includes "powers and duties" over leasing and rights-of-way, which was first assigned to another federal agency via Public Law 99-190, 99 Stat. 1185, 1236 (1985) (the "1985 Act") but transferred to ONHIR in 1988. Compl. ¶¶ 32, 60, 100 (citing 25 U.S.C. § 640d-11(c)(2)(A)).

Among other things, the Complaint alleges and claims that Defendant has maladministered New Lands grazing, leasing, and rights-of-way. *Navajo I*, 171 Fed. Cl. at 254-55. This includes that Defendant variously has used and allowed others to use New Lands without required Navajo consent, leases, or other legal authorization, improvidently allowed lands to remain vacant and unused, and improvidently allowed land uses without fair market consideration. *E.g.*, Compl. ¶¶ 49-55, 69, 72-87, 91-95, 105-09. The Complaint also alleges and claims that unauthorized purported conveyances of New Lands interests are ultra vires and void, violate the Non-Intercourse Act, 25 U.S.C. § 177, and impose trespass. Compl. ¶¶ 79, 81-82. All this includes allegations about the substance of and Defendant failing to follow governing federal laws, regulations, and policies, including the ONHIR Management Manual ("OMM"), per which ONHIR's operation "'shall be governed[.]'" *Id.* ¶¶ 2, 34-35 (quoting 25 C.F.R. § 700.219(a)), 41-46, 62-69. The Complaint also

2

alleges that Defendant has failed to—and requests a remand to require that Defendant—maintain required records for New Lands administration and revenue. *Id.* ¶¶ 52, 70-72, 123-26 & p. 41. The Complaint also acknowledges that an August 2014 settlement waived the Nation's prior claims but asserts that maladministration is continuing and can be broken into independent and distinct events or wrongs, so all post-settlement claims remain actionable. *Id.* ¶¶ 57, 97, 110, 157, 162.

In briefing on Defendant's motion to partially dismiss the Complaint, the Nation explained among other things Defendant's fiduciary duty to maintain records for trust asset administration and that "[t]he Non-Intercourse Act . . . requires a federal treaty or statute to authorize conveyances of tribal lands, so 'failure to strictly comply with the requirements of such a statute renders any resulting conveyance void.'" Dkt. No. 12 at 25-26 (quoting *Shoshone Indian Tribe v. United States* ("*Shoshone*"), 672 F.3d 1021, 1037-38 (Fed. Cir. 2012)). The Court denied the motion regarding leasing and rights-of-way maladministration claims, holding that Defendant has "a money-mandating fiduciary duty to administer the New Lands" for the Nation, including an "unambiguous directive" with a "specific fiduciary duty" transferred from the 1985 Act. *Navajo I*, 171 Fed. Cl. at 253, 265, 271, 272. The Court also reserved ruling on the Complaint's requests for equitable relief pending consideration of the merits. *Id.* at 272. However, the Court dismissed claims that accrued before August 2014, per the Nation's conceded settlement waiver. *Id.* at 262-63.

In April 2025—shortly after the parties filed the Joint Preliminary Status Report, Dkt. No. 46—the Nation served its Interrogatories and the RFPs on Defendant.[1] Consistent with allegations in the Complaint, the discovery requests seek documents and ESI about Defendant's interpretation

_____

[1] *See* Navajo Nation's First Set of Interrogs. to Def. United States (April 25, 2025) ("Interrogatories"), attached here as Ex. 1; Navajo Nation's First Set of Reqs. for Production to Def. United States (April 25, 2025) ("the RFPs"), attached here as Ex. 2. The facts in this motion are verified and the attached exhibits are authenticated by the verification at the end of this motion. *See* 28 U.S.C. § 1746; *Shepard v. Quillen*, 840 F.3d 686, 687 n.1 (9th Cir. 2016) ("'[A] verified motion functions as an affidavit.'") (citation omitted).

3

and administration of § 10(h), including duties regarding the Relocation Beneficiaries, as well as the 1985 Act, completion of discharge of relevant federal functions, governing federal governing regulations and the OMM, and potentially void conveyances and resulting trespass. Ex. 1 at Interrogs. 5-9; Ex. 2, at RFPs 2-3, 5-13, 25, 43. Also, since § 10(h) was enacted by the Navajo and Hopi Indian Relocation Amendments Act of 1980 ("1980 Act"), Pub. L. 96-305, 94 Stat. 929, and amended by the Navajo and Hopi Indian Relocation Amendments of 1988 ("1988 Act"), Pub. L. 100-666, 102 Stat. 3929, the discovery requests seek documents and information from 1980 and later, including about the 1988 Act as well as the 1980 Act and the 1985 Act before enactment of the 1988 Act. Interrogs. ¶ 32; RFPs ¶ 34, RFPs 1-4. And given the allegations and remand request about records, the RFPs also seek discovery concerning ONHIR's record retention requirements, policies, procedures, and practices. RFP 27.

In June 2025, the Court approved and entered the SDMO to govern discovery. Dkt. No. 52. And in July 2025, Defendants served Objections and Responses to the Interrogatories and the RFPs. Def.'s Objs. & Resps. to Pl.'s First Set of Interrogs. (July 18, 2025) ("DORI"), attached here as Ex. 3; Def.'s Objs. & Resps. to Pl.'s First Set of RFPs (July 18, 2025) ("DORR"), attached here as Ex. 4. In September 2025, the parties exchanged correspondence and met virtually for over an hour to discuss Defendant's discovery objections, in a good-faith attempt to resolve or narrow discovery issues, with limited success. *See, e.g.*, Letter from Daniel I.S.J. Rey-Bear to Sara C[o]stello (Sept. 2, 2025) ("NN Response"), attached here as Ex. 5; Letter from Sara E. Costello to Daniel I.S.J. Rey-Bear (Sept. 23, 2025) ("US Reply"), attached here as Ex. 6. Also, Defendant reported that ONHIR had taken steps to prepare for closure, including transferring its paper records to a NARA Federal Records Center in California and having its entire staff retire. Dkt. No. 57. In part due to a six-week lapse of federal funding, Defendant did not start production in response to the RFPs until December 2025, though the issues raised in September remained unresolved. Letter

4

from Reade E. Wilson to Daniel I.S.J. Rey-Bear (Dec. 11, 2025), attached here as Ex. 7; Letter from Daniel I.S.J. Rey-Bear to Sara Costello (Dec. 30, 2025), attached here as Ex. 8.

So far in 2026, Defendant's productions have continued slowly and the nonexpert written discovery deadline has been extended to October 2026. Joint Mtn. to Extend Discovery Schedule 2, Dkt. No. 63; Scheduling Order, Dkt. No. 64. In a protocol for search-term filtering of electronically stored information ("ESI"), which the parties discussed in January 2026 per the SDMO, Dkt. No. 52 ¶ 15, *cf.* Dkt. No. 63 at 2, Defendant provided that it will not respond to RFPs 11-14 and 43 and will limit searches to after August 2014 for responses to other RFPs. Also in January 2026, the parties exchanged correspondence about potential destruction of records at ONHIR's Range Office when compiling records for transfer to NARA. *See* Email from Dan Rey-Bear to Sara Costello (Jan. 14, 2026), attached here as Ex. 9; Letter from Sara Costello to Daniel I.S.J. Rey-Bear (Jan. 16, 2026), attached here as Ex. 10. And during the parties' January 2026 discussion, the Nation requested that Defendant promptly provide SF135s for ONHIR's transfer of records to NARA to help the Nation confirm what ONHIR records still exist.

Most recently, in March 2026, Defendant stated "it does not intend to withhold documents concerning current or continuing land possessions or uses which predate August 26, 2014" but "does not intend to expand the date ranges" for ESI searches. *See* Letter from Sara E. Costello to Daniel I.S.J. Rey-Bear (March 9, 2026), attached here as Ex. 11. Defendant also asserted that ONHIR's SF135s are not responsive to the Nation's RFPs so Defendant declined to produce them. *Id.* at 3. Thereafter, the Nation made another good-faith attempt to resolve or narrow discovery disputes via another discussion with opposing counsel. This included noting that the SF135s are within the scope of RFP 27. However, Defendant still refused to produce the SF135s and insisted on only searching some potentially relevant records at this time. This leaves the Nation uncertain what responsive documents and ESI Defendant still has and is producing or withholding.

**ARGUMENT**

The Nation warrants an order compelling answers and production because—despite good-faith efforts to resolve these matters—Defendant has failed to answer interrogatories and to produce documents and ESI for which the Nation is entitled to discovery relevant to its claims proportional to the needs of the case. First, Defendant must produce "all" such responsive materials and may not unilaterally limit discovery responses, including for agency counsel communications. Second, Defendant may not limit discovery to after August 2014, since the Nation's waiver of previously accrued claims does not preclude discovery of earlier evidence relevant to later claims. Third, Defendant also may not refuse discovery about agency interpretations of governing authorities, especially shortly after those enactments or when developing and first implementing governing authorities, since those inform later agency actions and merit greater consideration than post-hoc litigating positions. Fourth, Defendant cannot refuse discovery about implementation of the mandate in § 10(h) that the New Lands "shall be used solely for the benefit of" the Relocation Beneficiaries since that is an essential element of Defendant's specific, enforceable fiduciary duty for New Lands administration. Fifth, Defendant must provide discovery about when federal New Lands duties will be fully discharged, since that affects that administration. Sixth, Defendant must produce ONHIR's SF135s since those fall within the Nation's RFP concerning Defendant's relevant record retention practices. Finally, the Nation is entitled to reimbursement for attorney fees incurred in bringing this motion since the Nation is entitled to the relief requested here.

I.    **The RCFC Authorize This Court to Compel Proportional, Relevant Requested Discovery for Which Defendant Has Failed to Provide Specific Supported Objections.**

Under Federal Rule of Evidence ("FRE") 401, evidence is relevant if "it has any tendency to make a fact more or less probable" and it "is of consequence in determining the action." "Whether information is relevant 'has been construed broadly to encompass any matter that bears

6

on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Giesecke & Devrient Gmbh v. United States* ("*Giesecke*"), 174 Fed. Cl. 532, 537 (2025) (citations omitted). With that context, RCFC 26(b)(1) provides the following:

> parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [(1)] the importance of the issues at stake in the action, [(2)] the amount in controversy, [(3)] the parties' relative access to relevant information, [(4)] the parties' resources, [(5)] the importance of the discovery in resolving the issues, and [(6)] whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Under that Rule, "'a particular fact need not 'be alleged in a pleading for a party to be entitled to discovery of information concerning the fact.'" *Herrmann v. United States*, 127 Fed. Cl. 22, 40 (2016) (citations omitted). In turn, RCFC 33(a)(2) permits a party to serve interrogatories that relate to "any matter that may be inquired into under RCFC 26(b)" while RCFC 34 likewise authorizes RFPs "within the scope of RCFC 26(b)."

The Court "'afford[s] a liberal treatment to the[se] rules of discovery'" and "'must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.'" *Giesecke*, 174 Fed. Cl. at 537 (citations omitted). After all, "'[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *Advanced Powder Sols., Inc. v. United States* ("*APS*"), 160 Fed. Cl. 575, 578 (2022) (citations omitted). And when "the United States is a party to litigation, it is 'subject to the rules of discovery' as is any other litigant." *Herrmann*, 127 Fed. Cl. at 34 (citation omitted).

Under those general standards, RFPs serve to eliminate "strategic surprise[,]" simplify issues, and expedite trial, while interrogatories also are "'intended to enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial.'" *3rd Eye Surveillance, LLC v. United States* ("*3rd Eye*"), 158 Fed, Cl. 216, 224 (2022) (citation

omitted). Thus, the government has "the affirmative obligation to produce those documents" it has which would be helpful to a plaintiff's case or may provide plaintiff "with additional avenues of inquiry." *K-Con Bldg. Sys., Inc. v. United States* ("*K-Con*"), 106 Fed. Cl. 652, 662 (2012). Also, objections to interrogatories or RFPs must be stated with specificity. *3rd Eye*, 158 Fed, Cl. at 224 (citing RCFC 33(b)(4); RCFC 34(b)(2)(C)). Thus, "boilerplate" objections—which merely state the legal grounds for objection without specifying either the asserted deficiency of the request or the harm from responding—are "'insufficient to justify withholding information.'" *Id.* (citation omitted). Moreover, "failure to make a proper objection" to an RFP "may result in the waiver of that objection." *Kansas City Power & Light Co. v. United States* ("*KCP&L*"), 139 Fed. Cl. 546, 564 (2018); *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 494 (2009). In turn, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond[,]" RCFC 37(a)(4), and discovery may be compelled where a party fails to answer an interrogatory or produce requested information, RCFC 37(a)(3)(B)(iii)-(iv).

To compel discovery, a party first must show that it sought that discovery and has made a good-faith genuine, personal, two-way attempt to resolve the discovery dispute without court intervention. *KCP&L*, 139 Fed. Cl. at 564 (citing RCFC 37(a)(1)) Thereafter, "[t]he party moving to compel discovery bears the burden of proving that the opposing party's answers are incomplete" while "the party opposing a motion to compel has the burden of . . . providing specific explanations or factual support as to how each discovery request is improper." *Jenkins v. United States*, 90 Fed. Cl. 585, 588 (2009) (citations and quotations omitted). All these standards govern this motion.

## II. Defendant Must Search for and Produce "All" Relevant Documents "Concerning" Requested Matters, Including Unprivileged Agency Counsel Communications.

Defendant impermissibly refuses to search for documents subject to privilege or protection for RFPs 10, 14-27, 29, 31-41, and 44-47 and impermissibly objects to producing "all" documents

"concerning" the matters in RFPs 1-27, 29, 31-40, and 43-45. *See generally* DORR. For example, Defendant has informed the Nation that it will limit—or, in its parlance, "prioritize"—searches of ONHIR's ESI to only that from certain ONHIR employees, and will search for agency counsel communications only from ONHIR's most recent attorney. None of these limits are permissible.

First, Defendant may not categorically refuse to search for privileged or attorney work-product information as Defendants have stated in almost every response to the Nation's discovery requests. *See* DORR. To be sure, RCFC 26(b)(1) protects privileged matters. Also, Defendant has produced and provided privilege logs for certain agency counsel communications and agreed to search emails sent by the most recent ONHIR agency counsel, Lawrence Ruzow ("Ruzow"). Ex. 11 at 3. However, Ruzow was not the only agency counsel who advised ONHIR. *See, e.g.,* S. Hrg. Rep. No. 109-183, at 58 (2005) (noting agency counsel Paul Tessler); *Begay v. United States*, 16 Cl. Ct. 107, 118 (1987) (same). Also, privileges do not shield policy advice, purely factual material, or "documents that simply state or explain a decision the government has already made[,]" such as agency memos or directives. *See Citizens for Responsib. & Ethics in Wa. v. U.S. Dep't of Justice*, 538 F. Supp. 3d 124, 134, 135 (D.D.C. 2021). Defendant therefore must search for all relevant agency counsel communications, not just for one person, and either provide privilege logs under RCFC 26(b)(5)(A) or produce unprivileged documents and ESI. *See* SDMO, Dkt. No. 52 ¶ 43.

Second, RFPs which ask for "all" documents are "especially appropriate" in a case such as this where they "are tailored to discrete categories of information that would not be meaningfully addressed by a sampling of responsive documents." *KCP&L*, 139 Fed. Cl. at 565 n.16. "Anything less than a request for 'all' documents would invite . . . [the other party] to selectively disclose information while technically complying with the discovery request." *Id.* Defendant therefore must fully respond to all the Nation's RFPs which are properly tailored to discrete subjects, and may not instead limit or "prioritize" searches to records from certain employees.

9

Third, Defendant cannot object to the Nation's use of the word "concerning" as not reasonably particular under RCFC 34(b)(1)(A). That appropriately "provide[s] . . . boundaries that would limit the burden on the" Defendant in its search for responsive documents. *Construction Helicopters Inc. v. United States*, 169 Fed. Cl. 102, 110 (2024) (citations omitted). For example, the RCFC use the word "concerning" 18 times and ONHIR's own regulations use that word 21 times. *See, e.g.,* RCFC 15(c), 26(b)(3)(B), 35(b)(4), 37(b)(1)-(2), 83.2(g)(2)(A), App. A ¶¶ 3(d), 5; 25 C.F.R. §§ 700.135(b)(5), .239(c)(9), .261(d), .262(e), .303(a), .305, .321, .537(c), .815(a)(1)(v), .837. At the same time, Defendant's own interrogatories and RFPs both use that word to define "relating to[.]" Given all that, Defendant may not either object to use of that word in the Nation's RFPs or limit its responses thereto on that basis. Defendant therefore must revise its limited responses to discovery requests based on these objections and produce information withheld on that basis without an otherwise valid objection.

### III.  The Nation's Pre-August 2014 Discovery Requests Remain Relevant Under FRE 401 and Proportional Under RCFC 26(b)(1) Regardless of Defendant's Blanket Objection Based on Waiver of Earlier Claims.

Defendant's blanket objections to the Nation's discovery requests for matters before August 2014 apart from those concerning "current or continuing land possessions or uses" cannot be supported by the Nation's waiver of claims accruing before then. Defendant's objections are based solely on the Court's grant of Defendant's motion to dismiss the Nation's claims that accrued before August 2014. *See* DORI, Ex. 3 at 3 *et seq.* (citing that date 21 times); DORR, Ex. 4 at 3 *et seq.* (citing that date 148 times). The Court made that ruling, but that does not support Defendant's discovery objections under RCFC 26(b)(1). This affects every Interrogatory and RFP for which Defendant has asserted that objection or so limited its response.

Defendant's blanket date cut-off objection wrongly conflates "accrual" with "relevance." That materially misreads FRE 401 and RCFC 26(b)(1). Contrary to those Rules, Defendant's

10

objection would impede rather than allow the Nation discovery that is reasonably necessary for a fair opportunity to develop and prepare its case. *Giesecke*, 174 Fed. Cl. at 537. And instead of facilitating required essential mutual knowledge, *APS*, 160 Fed. Cl. at 578; *Gilead Sciences, Inc. v. United States* ("*Gilead*"), 158 Fed. Cl. 415, 420 (2022), Defendant's objection would allow it only to review its prior records that may affect later actions and claims. That would impermissibly preclude discovery for a wide range of important background and foundation for the Nation's claims. *See, e.g.,* Compl. ¶¶ 26-30, 32, 37, 53, 61, 82. Among other things, this includes New Lands revenues collected before August 2014, which remain subject to claims thereafter about improper financial administration. *E.g.*, *id.* ¶¶ 72, 76, 85-86, 94, 110, 129-31, 141-43, 149-50. The Nation is entitled to develop its case as it deems appropriate, and "'possession of all available, pertinent documents' is a 'critical component'" of a party's ability to conduct effective depositions and will undoubtably narrow the focus of depositions. *Perfect Form Mfg. LLC v. United States*, 142 Fed. Cl. 778, 787 (2019). Defendant therefore cannot withhold from discovery information or documents predating August 2014 which "bears on, or that reasonably could lead to other matter[s] that could bear on" ongoing claims from after August 2014. *See Giesecke*, 174 Fed. Cl. at 537. Waiver of earlier claims does not bar earlier evidence relevant to later maladministration.

Instead, all the Nation's requested discovery from before August 2014 remains relevant and proportional to its needs in this case to show Defendant's multifarious maladministration over the entire period since August 2014. First, this evidence is important for issues in this action since the Nation needs to know how Defendant established and implemented New Lands administration and what revenue Defendant collected from that to assess post-August 2014 administration. Second, the amount in controversy is millions of dollars, which certainly makes pre-August 2014 evidence proportional. *See, e.g.*, Compl. ¶¶ 129-31. Third, apart from what Defendant may have provided previously to the Nation or will provide in discovery, Defendant has sole access to its

11

own records, to the extent that they exist and are retrievable. *Cf. id.* ¶¶ 70, 72. In turn, Defendant should know ONHIR's background better than the Nation to answer the Nation's discovery requests. Fourth, Defendant has far larger legal staff and budget resources which can accommodate this discovery. *See, e.g.*, U.S. Dep't of Justice, FY2026 Budget & Performance Summary 77 (June 13, 2025) (noting FY2025 Division budget of $116.2 million including 260 attorneys). Fifth, this discovery is important to resolving issues for the Nation's claims, for all the reasons explained above. Sixth, the burden or expense of this discovery does not outweigh its likely benefit, since the Nation needs this as explained above. Also, Defendant already should know its history of New Lands administration and revenue and has collected and must otherwise review ONHIR's and other relevant federal agencies' records for this case.

In fact, despite Defendant's unequivocal assertion that information pre-dating settlement is not relevant, Defendant already has directed the Nation to numerous pre-August 2014 conveyances in its responses to RFPs 30-31 and 44-47. *See* DORR at 17, 23-25. Those responses include leases executed *before* August 2014, but which have remained effective during the relevant period, as well as ongoing rights-of way. Simply put, Defendant's responses and productions contradict its objection based on the purported cut-off date.

Weighed against all the above, Defendant cited *Parker v. United States*, No. 8:18CV123, 2020 WL 729211, at *12 (D. Neb. 2020) to support its contention that discovery of any document which existed before August 2014 is not proportional to the needs of this case. *See* US Reply, Ex. 6 at 4. But *Parker* supports the Nation's discovery here. Discovery about negligent healthcare hiring and supervision claims in *Parker* was limited to periods when relevant staff were employed, which necessarily included the period before alleged negligent treatment. *See Parker*, 2020 WL 729211, at *12. Here too, the Nation's discovery requests are appropriately limited to after enactment of the 1980 Act, and documents predating August 2014 are necessary for claims

accruing thereafter. For example, as Defendant has conceded, the Nation cannot challenge ongoing lease or rights-of-way compliance without having copies of conveyances even if they predate August 2014. *See, e.g.,* Compl. ¶¶ 76, 86, 93-94, 96-97, 107-09. Otherwise, *Parker* is inapposite since the plaintiff there sought discovery for periods pre-dating the employment of staff who were allegedly negligently hired or managed. *See Parker*, 2020 WL 729211, at *11. Here, discovery is appropriate for when Congress mandated and Defendant established New Lands administration and sometimes deposited revenue therefrom. *See, e.g.*, Compl. ¶¶ 25-32. All such pre-August 2014 matters in the Complaint are relevant and proportional, and the Nation is not seeking information or records predating the pivotal 1980 Act.

For example, the Nation's claims about trespass grazing, leasing, and rights-of-way accruing in or after August 2014 may implicate prior documents and information, since earlier void "approvals" violate the Non-Intercourse Act and render possessors ongoing trespassers and "each trespass is its own cause of action with its own six-year statute of limitations." *Shoshone*, 672 F.3d at 1035, 1039; *see* 25 C.F.R. §§ 169.413, 700.725; Compl. ¶¶ 53-54, 73-79, 81, 82, 102-03, 106-08. That evidence is necessary for the parties to respectively establish or refute trespass subject to Defendant's continuing obligations and the continuing claims doctrine. *See, e.g., Ute Indian Tribe v. United States*, 145 Fed. Cl. 609, 625 (2019); *Goodeagle v. United States*, 111 Fed. Cl. 716, 724 (2013); *Oenga v. United States*, 91 Fed. Cl. 629, 647 (2010). Defendant should not be the only party allowed to review such evidence relevant to potential ongoing trespass.

IV.   **Defendant Also Must Produce Requested Documents About Governing Authorities Regardless of Date Since Those Also Are Relevant and Proportional.**

In responses to RFPs 1-4, 7-14, 25, 27, and 45, Defendant refuses to produce documents about interpretation and application of laws, regulations, and the ONHIR Management Manual ("OMM") governing grazing, leasing, and rights-of-way, and record retention, as well as

13

concerning ONHIR's Executive Director and the relevant authority of the Nahata Dziil Chapter ("NDC"). *See* DORR at 4-5, 6-8, 14, 15-16, 24. Those objections all fail since such evidence about governing authorities regarding ONHIR, its leadership, and NDC is relevant and proportional.

The Nation properly may seek discovery about ONHIR's "general policies and procedures" regardless of date from 1980 to determine "its obligations" regarding various types of agreements, and not just discussion of specific agreements at issue. *See Gilead*, 158 Fed. Cl. at 421. Additionally, the Nation's discovery requests may encompass the entire time when relevant agreements were made. *Id.* That includes the entire period of documents affecting "current or continuing land possessions or uses[.]" In turn, "[l]imiting [a party]'s discovery to only the . . . agreements at issue here would deprive them of the relevant knowledge of whether" ONHIR has "general policies that were not followed in this case." *Id.*

Moreover, while "courts must exercise independent judgment in determining the meaning of statutory provisions[,]" "'contemporaneous construction of those who were called upon to act under the law . . . is entitled to . . . respect.'" *Loper Bright Enters. v. Raimondo*, 602 U.S. 369, 385-86, 394 (2024) (citation omitted). That comports with the "'basic rule'" that "'[a]n agency must defend its actions based on the reasons it gave when it acted'" and not "counsel's *post hoc* rationalizations for agency action.'" *BAE Systems Norfolk Ship Repair, Inc. v. United States* ("*BAE*"), 163 Fed. Cl. 217, 227 (2022) (Somers, J.) (citations omitted). That especially applies here since the 1980 Act and the 1988 Act, including incorporation of the 1985 Act, impose a specific, fiduciary duty on Defendant regarding New Lands leasing and rights-of-way, *Navajo I*, 171 Fed. Cl. at 264-65, and the standard for that "'is not mere reasonableness'" or "arbitrary and capricious" "'but the highest fiduciary standards.'" *Jicarilla Apache Nation v. United States*, 100 Fed. Cl. 726, 739 n.18 (Fed. Cl. 2011) (citations omitted). Given all that, the Nation is entitled to discovery about Defendant's contemporaneous interpretation and application of governing

14

authorities that inform New Lands administration and Defendant's interactions with the NDC.[2]

All six proportionality considerations in RCFC 26(b)(1) support these disclosures. First, all these requested documents concern centrally important issues for the Nation's claims. Federal policy statements about New Lands administration, interests, or uses, and NDC's role readily relate to the Nation's claims. Second, the amount in controversy is substantial, given that this affects many claims in this case. *See* Compl. at 41. Third, these documents are likely within Defendant's sole possession, custody, and control since it has the sole statutory authority and enforceable fiduciary duties to administer and develop the New Lands under § 10(h). Fourth, as noted above, Defendant has far greater resources which can handle this discovery. Fifth, this discovery is important for resolving issues regarding Defendant's maladministration of the New Lands. Finally, the burden or expense of this discovery will not outweigh its likely benefit given all the above circumstances. With all this, Defendant must fully respond to the RFPs cited above here.

**V.    Defendant Cannot Dispute the Relevance of Information and Records About § 10(h)'s Mandate That the New Lands "Shall Be Used Solely for the Benefit of" Relocation Beneficiaries Since That Is an Essential Part of New Lands Administration.**

Defendant objects to Interrogatory 9, about Defendant's relationship with the Relocation Beneficiaries concerning the New Lands, and RFPs 5 and 6, about identification of and communications with the Relocation Beneficiaries, all based on the Court's Motion to Dismiss ruling, which dismissed the Identifiable Group of Relocation Beneficiaries based on lack of standing. DORI, Ex. 3 at 17; DORR, Ex. 4 at 5. However, that ruling did not and could not eliminate or abrogate Defendant's explicit statutory duties under §10(h). As quoted at the outset,

---

[2]*Compare, e.g.,* Compl. ¶¶ 17, 28, 31-37, 39-48, 60-68, 82-90, 100-05 *with* NARA & ONHIR, Std. Form 115, Request for Records Disposition Authority (Sept. 6, 2002) ("SF115"), attached here as Ex. 12 at 4 (noting 4.5 cubic feet of legal opinion files); Navajo and Hopi Indian Relocation Comm'n, Memo from Paul Tessler to Mike McAlister (June 5, 1990) with U.S. Dep't of the Interior, Memo from Asst. Sec. – Indian Affairs to Wilson Barber *et al.* (Sept. 4, 1987) (concerning authorities under the 1985 and 1988 Acts), attached here as Ex. 13.

§ 10(h) expressly mandates that the New Lands "shall be administered by" Defendant "and shall be used solely for the benefit of" the Relocation Beneficiaries, and that Defendant "shall" have "sole authority for final planning decisions regarding the development of [the New Lands.]" 25 U.S.C. § 640-10(h). The second clause does not exist in a vacuum, but must be read in context with the first and the third clauses "with a view to their place in the overall statutory scheme[.]" *Sucic v. Wilkie*, 921 F.3d 1095, 1098 (Fed. Cir. 2019). For that, the Court has held that § 10(h) "clearly instructs ONHIR to administer the New Lands[,]" including "full, exclusive, and final administrative control over the[ir] development" with an "unambiguous directive" and "specific fiduciary duty" "so that the New Lands will be meaningfully habitable for the Relocatees." *Navajo I*, 171 Fed. Cl. at 265-66. Those "Relocatees" are Relocation Beneficiaries as defined in § 10(h).

The information and records sought via the above-referenced discovery requests all directly relate to implementation of Defendant's specific fiduciary duty to administer and develop the New Lands for the sole benefit of the Relocation Beneficiaries. Defendant's treatment of and interactions with the Relocation Beneficiaries in relation to the New Lands are not tangentially related to this case and were not rendered moot, but remain central to ongoing maladministration claims. For example, the Nation has alleged that governing law imposes duties on Defendant regarding the Relocation Beneficiaries and the New Lands, Defendant has sometimes failed to administer the New Lands and revenue therefrom to benefit the Relocation Beneficiaries, less than 11% of the known Relocation Beneficiaries reside on the New Lands, and Defendant has never fully identified the Relocation Beneficiaries or communicated with them regarding New Lands administration. *E.g.*, Compl. ¶¶ 17, 28, 37, 47, 54, 69, 80, 89-90, 96-97, 109-10, 115, 127-30, 153-54. The Nation is entitled to the requested discovery essential to develop those allegations.

Defendant's objections to the Nation's Interrogatory 9 and RFPs 5 and 6 are unfounded. It remains entirely relevant and proportional within the authorized scope of discovery for the ongoing

16

claims to ask about how Defendant has understood and implemented § 10(h)'s explicit statutory mandate that the New Lands "shall be used solely for the benefit of" the Relocation Beneficiaries. Discovery about compliance with the primary governing statute is readily relevant and necessary.

Nor are either Interrogatory 10 or RFP 6 too vague or indefinite to apprise Defendant about the information and documents that the Nation seeks. Defendant has had many years to interpret, understand, apply, and implement that statutory provision, and has previously commented on it. *See, e.g.*, Compl. ¶¶ 47, 115. Given that, Defendant cannot now plead ignorance or a lack of understanding about what that statutory mandate means. And Defendant should be held to what it stated contemporaneously about establishment and implementation of that statutory duty and not be allowed to posit post-hoc rationalizations for its administration. *See BAE*, 163 Fed. Cl. at 227. Defendant's blanket refusal to address this core, governing statutory prescription is unjustified, so Defendant must fully respond to that interrogatory and those RFPs.

## VI.    Defendant Must Produce Documents Concerning Discharge of ONHIR's Functions Since That Concerns a Core Aspect of Ongoing New Lands Maladministration.

Defendant objects to RFP 43 and asserts that documents requested there concerning the full discharge of ONHIR's functions are irrelevant. DORR, Ex. 4 at 23. Defendant variously objects to this RFP based on its references to "all" and "concerning," as well as based on privilege, and August 2014. *Id.* But those unsubstantiated objections all fail as explained above. Defendant also objects that this RFP is irrelevant since the case does not challenge any decision related to the full discharge of ONHIR's functions. *Id.* That objection fails since § 10(h) expressly provides that ONHIR remains responsible for administering the New Lands "until relocation under the Commission's plan is complete[.]" 25 U.S.C. § 640d-10(h). The Relocation Act also provides that ONHIR shall cease to exist only "when the President determines that its functions have been fully discharged." *Id.* § 640d-11(f). Moreover, the Complaint alleges that Defendant's multifarious

17

maladministration of the New Lands is continuing, *e.g.*, Compl. ¶¶ 54-57, 76, 78, 80, 96-97, 109-10, and the Court denied Defendant's motion to dismiss regarding the Nation's request for equitable relief, *Navajo I*, 171 Fed. Cl. at 272. Namely, the Complaint's request for "remand . . . per 28 U.S.C. Section 1491(a)(2) . . . with directions to properly maintain records for and administer and use" the New Lands remains pending. Compl. at 41. Therefore, the status and substance of Defendant's potential completion of the discharge of its functions remains directly relevant to claims of continuing maladministration and an outstanding relief request. That readily makes this RFP relevant and proportional based on all factors under RCFC 26(b)(1), like the other discovery requests reviewed above. Defendant must provide discovery responses for this RFP.

## VII. Defendant Must Produce ONHIR's SF135s Since RFP 27 Properly Encompasses Those.

The Nation's RFP 27 requested "[a]ll documents concerning ONHIR's record retention requirements, policies, procedures, and practices." RFP 27. In response, Defendant stated that it would produce "record retention schedules" from ONHIR's files and at the NARA Federal Records Center in California. DORR at 15. Defendant later reported that it transferred all its paper records to NARA. Dkt. No. 57. Yet 11 months after service of the RFPs, Defendant still has not produced responsive records.

Central among documents concerning Defendant's relevant records retention are ONHIR's SF135s, which identify and describe which and how many records have been transferred from ONHIR to NARA for permanent disposition. *See* NARA, Std. Form 135, Records Transmittal and Receipt (Rev. 7-85), available at https://www.archives.gov/files/frc/forms/sf-135.pdf. Indeed, "[t]ransfers to NARA Federal Records Centers must be preceded by the submission of a Standard Form (SF) 135, Records Transmittal and Receipt, or an electronic equivalent" and "[a] separate SF 135 or electronic equivalent is required for each individual records series having the same

disposition authority and disposition date." 36 C.F.R. § 1233.10(c), (d). Despite that, Defendant now asserts that "[t]he SF135s are not responsive to the Nation's first set of RFPs, and the United States declines to provide them." Ex. 11 at 3. And when the Nation noted the discrepancy between that objection and RFP 27 and tried to discuss and resolve this with Defendant, Defendant provided no further explanation. That is untenable given what RFP 27 requests, how Defendant previously responded, and what SF135s are. And it is indisputable that Defendant must have created them in order to transfer ONHIR's records to NARA.

Finally, the Nation appropriately requested ONHIR's SF135s to determine the scope of existing retained relevant records, how Defendant has implemented relevant retention requirements under the Federal Records Act, and what remand remains warranted to rectify remaining deficiencies. *See* Dkt. No. 12 at 25-26. All that relates to the Nation's allegations that Defendant has failed to maintain required records for New Lands administration and revenue. Compl. ¶¶ 52, 70-72, 123-26 & p. 41. And that matters given "specific duties relating to the maintenance of records for all land held in trust by the United States[.]" *Oglala Sioux Tribe v. United States*, 21 Cl. Ct. 176, 192-93 (1990). That includes ONHIR's legal duty for the New Lands to "'make and preserve records'" "'to protect the rights of . . . persons directly affected by the agency's activities.'" Compl. ¶ 70 (quoting 44 U.S.C. § 3101 and 36 C.F.R. § 1220.30(a)). Defendant's record retention schedules for what ONHIR once planned to maintain, such as the SF115 in Ex. 12, may have limited value if Defendant's record retention practices did not also involve transferring those records to NARA per SF135s when Defendant otherwise effectively closed ONHIR, Dkt. No. 57. Defendant has "the affirmative obligation to produce those documents" which may provide the Nation "with additional avenues of inquiry." *K-Con*, 106 Fed. Cl. at 662. Accordingly, Defendant must be compelled to promptly produce ONHIR's SF135s.

19

**VIII.   If the Court Grants this Motion to Compel, the Nation Is Entitled to Reasonable Expenses Including Attorneys' Fees Under RCFC 37(a)(5)(A).**

If the Court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." RCFC 37(a)(5)(A). There are three circumstances in which attorneys' fees are not to be awarded: (i) moving to compel disclosure before making a good faith attempt to meet and confer, (ii) when "the opposing party's nondisclosure, response, or objection was substantially justified[,]" or (iii) situations in which "other circumstances make an award of expenses unjust." RCFC 37(a)(5)(A)(i)-(iii). None of those exceptions apply here.

First, the Nation has made extended and extensive good-faith attempts to obtain discovery without Court intervention. This included multiple and extensive correspondence and discussions over a number of months. *See supra* Background; Exs. 5-8, 11. It is unclear what more the Nation must do to attempt to resolve this.

Second, as explained above, there are not substantial justifications for Defendant's objections, failures, or refusals to provide discovery requested by the Nation. Instead, each of those overlooks or contravenes material allegations and governing law.

Finally, there are no "other circumstances [which would] make an award of expenses unjust." Defendant has the information, documents, and resources available to fully comply with the Nation's relevant and proportional discovery requests. Yet Defendant has failed or refused to do so based on various unfounded reasons. The only unjust circumstances here are Defendant's failures to provide prompt and complete discovery to which the Nation is entitled.

20

In these circumstances, an award of expenses including attorneys' fees to the Nation is appropriate if the Court grants this motion. In that instance, the Nation will provide sufficient documentation to support its recoverable expenses and fees.

## CONCLUSION

For the foregoing reasons, the Nation respectfully requests that the Court compel Defendant to produce full and complete responses as described in this Motion. The Nation also respectfully requests that the Court award reasonable expenses, including attorneys' fees, which the Nation has been required to incur to make this Motion.

Respectfully submitted,

/s/Daniel I.S.J. Rey-Bear
Daniel I.S.J. Rey-Bear, Lead Attorney
Timothy H. McLaughlin
Rey-Bear McLaughlin, LLP
421 W Riverside Ave, Suite 1004
Spokane, WA 99201-0410
telephone: 509-747-2502
dan@rbmindianlaw.com
tim@rbmindianlaw.com

Kris Beecher, Acting Attorney General
Katherine Belzowski, Asst. Attorney General
Office of the Attorney General
Navajo Nation Department of Justice
P.O. Box 2010
Window Rock, Navajo Nation (AZ) 86515
telephone: 928-871-6345
kbelzowski@navajo-nsn.gov

Christina S. West
Tierra N. Marks
Keegan Richardson Solimon & West LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM  87107
telephone: 505-938-9144
cwest@indiancountrylaw.com
tmarks@indiancountrylaw.com

March 24, 2026

21

**VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct and that the exhibits hereto are true and correct copies of the respective documents therein except for exhibit labels and electronic filing stamps. Executed on March 24, 2026.

/s/Daniel I.S.J. Rey-Bear
Daniel I.S.J. Rey-Bear

22

**EXHBIT LIST**

1.      Navajo Nation's First Set of Interrogs. to Def. United States (April 25, 2025) ("Interrogs.").

2.      Navajo Nation's First Set of Reqs. for Production to Def. United States (April 25, 2025) ("the RFPs").

3.      Def.'s Objs. & Resps. to Pl.'s First Set of Interrogs. (July 18, 2025) ("DORI")

4.      Def.'s Objs. & Resps. to Pl.'s First Set of RFPs (July 18, 2025) ("DORR").

5.      Letter from Daniel I.S.J. Rey-Bear to Sara C[o]stello (Sept. 2, 2025) ("NN Response").

6.      Letter from Sara E. Costello to Daniel I.S.J. Rey-Bear (Sept. 23, 2025) ("US Reply").

7.      Letter from Reade E. Wilson to Daniel I.S.J. Rey-Bear (Dec. 11, 2025).

8.      Letter from Daniel I.S.J. Rey-Bear to Sara Costello (Dec. 30, 2025).

9.      Email from Dan Rey-Bear to Sara Costello (Jan. 14, 2026).

10.     Letter from Sara Costello to Daniel I.S.J. Rey-Bear (Jan. 16, 2026).

11.     Letter from Sara E. Costello to Daniel I.S.J. Rey-Bear (March 9, 2026).

12.     Natl. Archives & Records Admin. & Office of Navajo & Hopi Indian Relocation, Std. Form. 115, Request for Records Disposition Authority (Sept. 6, 2002).

13.     Navajo and Hopi Indian Relocation Comm'n Memo from Paul Tessler to Mike McAlister (June 5, 1990) with U.S. Dep't of the Interior Memo from Asst. Sec. – Indian Affairs to Wilson Barber *et al.* (Sept. 4, 1987).

23